_____

No. 95-3932
_____

Donald E. Reese,                          *
                                          *
        Appellant,                        *
                                          *        Appeal from the United States
     v.                                   *        District Court for the
                                          *        Eastern District of Missouri.
Paul Delo, Superintendent,                *
Potosi Correctional Center,               *
                                          *
        Appellee.                         *

_____

               Submitted:  June 10, 1996

                  Filed:  September 4, 1996
_____

Before WOLLMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and
     DOTY,* District Judge.
_____


WOLLMAN, Circuit Judge.


     Donald E. Reese, a Missouri inmate sentenced to death, appeals the
district court's[1] denial of his petition for writ of habeas corpus filed
pursuant to 28 U.S.C. § 2254.  We affirm.


                          I.  Background


     On March 25, 1988, Reese was convicted of two counts of first-degree
murder.  The details of the crime were set forth by the Missouri Supreme
Court in State v. Reese, 795 S.W.2d 69 (Mo. 1990) (en banc), cert. denied,
498 U.S. 1110 (1991), and are summarized

_____

        *The HONORABLE DAVID S. DOTY, United States District
        Judge  for  the  District  of  Minnesota,  sitting  by
        designation.

        [1]The Honorable Charles A. Shaw, United States District Judge
for the Eastern District of Missouri.

here.

On September 9, 1986, four bodies were discovered at the Marshall Junction Wildlife Reserve shooting range. After the investigating officers learned that Reese had purchased the type of ammunition used in the killings, they conducted several interviews with him, as well as a consensual search of his home. Following his arrest on September 15, Reese asked the officers whether he should retain an attorney. The officers replied that they could not advise him on the matter but that an attorney could be furnished if he wanted one. Reese replied, "Forget it," whereupon he was read his Miranda rights. After waiving his rights, Reese talked with the officers for approximately three hours and denied participation in the crime. Later that evening he was arraigned on a complaint charging him with multiple counts of first degree murder, armed criminal action, and robbery. He was advised of his right to retain an attorney, right to be assigned an attorney if he could not afford one, and right to remain silent. A preliminary hearing was set for September 18.

The next morning, Reese again waived his Miranda rights and refused an officer's offer to telephone an attorney for him by replying, "I didn't do it and I don't need an attorney and I don't want one." An officer then advised Reese that he needed to have an attorney for the preliminary hearing and that that policy required him to fill out a form to determine whether he was financially eligible for the appointment of the public defender. Reese continued to talk to the officers for approximately one hour. He again denied his involvement in the crime and reaffirmed that he did not need an attorney.

The interview resumed later that afternoon after Reese confirmed that he had waived his Miranda rights. During the course of the interview, Reese was visited by his wife and his son. At approximately 6:00 p.m. that evening, Reese admitted that he killed

-2-

the four men.  His statement was reduced to writing and included an express waiver of his <u>Miranda</u> rights.  Reese later led the officers to the place where he had hidden the murder weapon and the victims' wallets and money.

Reese was charged with two counts of first-degree murder.  After the jury found him guilty, the state presented evidence at the penalty phase of the trial that Reese had attended the funeral of two of the victims and had posed as a family friend despite the fact that he did not know the victims.  John Lewis, Reese's cellmate, testified that Reese had told him that he went to the shooting range intending to get money.  Reese also related the details of the crime to Lewis.  Despite Reese's presentation of mitigating evidence through family members and other witnesses, the jury recommended a sentence of death for both offenses, citing as aggravating circumstances that Reese had murdered the victims for the purpose of receiving money and during the course of a robbery.  The trial court sentenced Reese to death for the murder of James Watson and to life imprisonment for the murder of Christopher Griffith, after taking into consideration the fact that Griffith's family had expressed their opposition to the death penalty.

On November 14, 1988, Reese filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.  On July 20, 1989, the post-conviction court denied Reese's request for relief after conducting an evidentiary hearing.  Reese then appealed both his convictions and sentences, along with the denial of post-conviction relief, to the Missouri Supreme Court.  <u>See</u> <u>Reese</u>, 795 S.W.2d 69.  The Missouri Supreme Court affirmed his convictions, sentences, and the denial of post-conviction relief in the consolidated appeal.  <u>Id.</u>

Reese then petitioned for relief in federal district court.  On October 24, 1995, the district court denied Reese's second amended petition for habeas corpus and granted him a certificate of

probable cause to appeal.  On appeal Reese presents most of the claims denied by the district court.

## II.  Ineffective Assistance of Counsel

Reese first claims that his trial attorney was ineffective in failing to:  (1) investigate his background, psychological impairments, and family history; (2) withdraw as counsel or preserve the attorney-client relationship when it began to break down before trial; and (3) investigate and prepare the penalty phase evidence.

We review ineffective assistance claims de novo, as they present mixed questions of law and fact.  Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988) (en banc), cert. denied, 490 U.S. 1040 (1989).  The district court held that Reese's ineffective assistance claims were procedurally barred because he failed to advance his claims on appeal from the denial of his Rule 29.15 motion for post-conviction relief.  We agree. In Missouri, a claim presented in a Rule 29.15 motion but not advanced on appeal is considered abandoned.  Sloan v. Delo, 54 F.3d 1371, 1382 (8th Cir. 1995) (citing O'Neal v. State, 766 S.W.2d 91, 91 (Mo.) (en banc), cert. denied, 493 U.S. 874 (1989)), cert. denied, 116 S. Ct. 728 (1996).

Reese's contention that the ineffective assistance claims are not barred because he raised them in his state habeas corpus petition pursuant to Missouri Supreme Court Rule 91 is without merit.  See State ex rel. Simmons v. White, 866 S.W.2d 443, 444 (Mo. 1993) (en banc) (petitioner who fails to advance claim on appeal cannot seek review in Rule 91 petition unless claim presents jurisdictional issue or circumstances so "rare and extraordinary" that manifest injustice will result).  Although the Missouri courts have not yet determined what circumstances constitute manifest injustice, we have held that "state habeas proceedings are not to

be used in lieu of Rule 29.15 unless the petitioner can demonstrate that the claim was not `known to him' when he filed his 29.15 motions." Sloan, 54 F.3d at 1382 (citing Simmons, 886 S.W.2d at 446-47). Clearly, this is not the case here. Likewise, Reese's contention that the claims are not barred because they were raised in his motion to recall the mandate is without merit, for "a motion to recall the mandate cannot be used to allege ineffective assistance of trial counsel." Nave v. Delo, 62 F.3d 1024, 1031 (8th Cir. 1995), cert. denied, 116 S. Ct. 1837 (1996).

Reese further argues that his claims are not procedurally barred because Rule 29.15 was designed to thwart federal habeas review of his state convictions and is thus invalid. "[A] procedural default under state law may constitute independent and adequate state law grounds precluding federal review." Oxford v. Delo, 59 F.3d 741, 744 (8th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 262 (1989)), cert. denied, 116 S. Ct. 1361 (1996). The state procedural rule must be both firmly established and regularly followed, however, to preclude federal review. Id. We have previously rejected claims that Rule 29.15 is an inadequate state ground to bar federal review. See, e.g., Sloan, 54 F.3d at 1379-81 (time limit procedures under Rule 29.15 adequate); Oxford, 59 F.3d at 745 (verification requirement of Rule 29.15 was firmly established and regularly followed). Moreover, Reese fails to even allege that any procedural requirement under Rule 29.15 was not firmly established or regularly followed, so as to preclude review of his claims. See Oxford, 59 F.3d at 744-45.

Because Reese's claims are procedurally defaulted, he must show cause and actual prejudice from the alleged constitutional violations to warrant federal review. Forest v. Delo, 52 F.3d 716, 719 (8th Cir. 1995). Reese raises the ineffective assistance of his post-conviction appellate counsel as cause. There is no right to counsel in state post-conviction proceedings, however, Coleman v. Thompson, 501 U.S. 722, 752 (1991), and thus a claim that post

conviction appellate counsel was ineffective does not constitute cause for default.  Lowe-Bey v. Groose, 28 F.3d 816, 819 (8th Cir.), cert. denied, 115 S. Ct. 674 (1994).  Because Reese has failed to overcome the procedural bar, we decline to reach the merits of his ineffective assistance claims.

## III.  Prosecutorial Misconduct

Reese next raises three claims of prosecutorial misconduct, contending that the prosecutor failed to disclose three items of exculpatory evidence:  (1) a $500 payment to Reese's wife for her assistance in obtaining Reese's confession; (2) a deal between the state and Lewis, Reese's cellmate, for Lewis's testimony at the penalty phase; and (3) that Griffith's family was opposed to the death penalty.  The district court held that the first two claims were procedurally defaulted and that the third claim was without merit.

Because Reese failed to bring his first two claims in Missouri state court, he must establish cause for his default and prejudice before we will address their merits.  Forest, 52 F.3d at 719.  To show cause for his default, Reese alleges that his post-conviction appellate counsel was ineffective and that Rule 29.15 is inadequate.  We have already rejected these grounds as cause for default.  Moreover, Reese's allegation that his trial counsel was ineffective cannot constitute cause because Reese failed to present this claim in state court.  See Oxford, 59 F.3d at 747.

Reese also alleges ineffective assistance of his appellate counsel as cause.  Ineffective assistance of appellate counsel can constitute cause for default.  Murray v. Carrier, 477 U.S. 478, 492 (1986).  To prevail on an ineffective assistance claim, Reese must show that his attorney's performance was professionally unreasonable and that, but for his deficient performance, the outcome of the proceeding would have likely been different.

Griffin v. Delo, 33 F.3d 895, 900 (8th Cir. 1994) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). cert. denied, 115 S. Ct. 1981 (1995).

To assess the effectiveness of appellate counsel's conduct, we must examine Reese's underlying constitutional claims. Reese must show that the prosecutor suppressed evidence favorable to his defense that was material to the question of guilt in order to establish a Brady violation. Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992) (en banc), cert. denied, 507 U.S. 1020 (1993); see also Brady v. Maryland, 373 U.S. 83, 87 (1963). Reese admitted at his post-conviction hearing that he was aware that the police had offered his wife a reward if he confessed before trial. Thus, his claim that the prosecutor had suppressed the evidence is without merit, and appellate counsel's failure to raise this claim was not unreasonable.

Nor was appellate counsel's conduct unreasonable in failing to raise an allegation that the state had an agreement with Lewis. The district court found there was ample evidence to refute Reese's claim of an agreement.[2] Because there was no agreement, Reese could not establish a Brady violation; thus, appellate counsel acted reasonably in foregoing the claim.

We agree with the Missouri Supreme Court that Reese's contention that the prosecutor violated Brady by failing to disclose that the Griffith family was opposed to the death penalty has no merit. Rejecting the claim on Reese's direct appeal, the Missouri Supreme Court stated:

---

[2]The district court pointed out that Lewis had denied the existence of an agreement with the prosecution while under oath during the penalty phase. In addition, he referred to a letter apparently signed by the prosecutor which expressly stated, "Although prior to his testimony we had promised Mr. Lewis nothing for his testimony, it was his feeling that justice would have been frustrated should he refuse to testify."

> The opposition of the parents of one of the victims to capital punishment is not a material circumstance, and there was no violation of discovery principles in not disclosing this opposition. A criminal prosecution is a public matter and not a contest between the defendant and his victims, or their relatives.

Reese, 795 S.W.2d at 75.

The parties do not dispute that the prosecutor knew about this evidence and failed to disclose it to Reese. However, no constitutional violation occurs unless the withholding of such evidence denies the defendant the right to a fair trial. Walker v. Lockhart, 763 F.2d 942, 957 (8th Cir. 1985), cert. denied, 478 U.S. 1020 (1986). In other words, if the evidence would have affected the result of the trial, then the evidence should have been disclosed. Griffin, 33 F.3d at 904. Because the state court's determination on the materiality of evidence is a mixed question of law and fact, our review is de novo. Cornell, 976 F.2d at 382. The district court found that the outcome of the trial would not have been affected by the evidence. It stated:

> The result in the instant case was that the trial court was told of Griffin's [sic] family's opposition to the death penalty and reduced accordingly Petitioner's sentence for Griffith's death. There is no indication that Griffith's family's views on the death penalty would have influenced the jury when determining Petitioner's fate for murdering Watson.

We agree with the district court. Moreover, at least one circuit has held that a petitioner is not entitled to present evidence that a victim's relative is opposed to the death penalty. See Robinson v. Maynard, 829 F.2d 1501, 1505 (10th Cir. 1987) (relevant mitigating evidence only includes "that which applies to either the character or record of the defendant or to any of the circumstances of the offense").

-8-

# IV. Admission of Confession

Reese argues that his constitutional rights were violated by the improper admission of his confession. He contends that his Fifth Amendment rights were violated because both his confession and Miranda waivers were involuntary. In addition, he alleges that his Sixth Amendment right to counsel was violated when police continued to question him after he filled out an application requesting the public defender's services. The Missouri trial court found that Reese was fully aware of and understood his Miranda rights, and that his waivers and confession were voluntary.

## A. Fifth Amendment

We review questions of voluntariness de novo. Starr v. Lockhart, 23 F.3d 1280, 1294 (8th Cir.), cert. denied, 115 S. Ct. 499 (1994). A state court's factual findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(d).

In determining whether a confession is voluntary, we consider the totality of the circumstances. Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988). To establish that his confession was involuntary, Reese had the burden to show that his statements were the product of police coercion and his "`will [was] overborne and his capacity for self-determination critically impaired.'" Id. (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961)).

Our review of the totality of the circumstances persuades us that there was ample evidence to support the trial court's factual findings. First, Reese was given his Miranda rights at least four times during the course of the interviews with the officers. The fact that such warnings were given weighs in favor of a voluntariness finding. United States v. Mendoza, 85 F.3d 1347, 1350 (8th Cir. 1996) (citing Wayne R. LaFave & Jerold H. Israel, Criminal Procedure 268 (1985)).

In rejecting Reese's claim that he did not voluntarily waive his Fifth Amendment rights, the trial court pointed to Reese's receipt of repeated Miranda warnings, his refusal of a police officer's offer to telephone an attorney, and the lack of coercive police conduct. In addition, it relied on the fact that Reese was present at his arraignment hearing and was aware of the seriousness of the charges filed against him. The court also took into consideration that Reese was forty-three years old, had a high school equivalency diploma, and was familiar with the criminal justice system as he had been previously prosecuted for a felony. See Reese, 798 S.W.2d at 83 (Appendix encompassing the trial court's order). Given these circumstances, we agree that Reese voluntarily and knowingly waived his Miranda rights.

Reese alleges that neither his Miranda waivers nor his confession was voluntary because he was suffering from severe clinical depression, passive dependency personality, and low intelligence. He failed to present this evidence in state court, however. In any event, some mental impairments alone do not render statements involuntary. Jones v. Delo, 56 F.3d 878, 888 (8th Cir. 1995), cert. denied, 116 S. Ct. 1330 (1996). There must also be coercive police activity. See LaRette v. Delo, 44 F.3d 681, 688-89 (8th Cir.), cert. denied, 116 S. Ct. 246 (1995).

We agree with the Missouri trial court that not only was there a lack of coercion by the police, but "that the law enforcement authorities displayed a painstaking regard for the defendant's rights from the time of his arrest to his confession." Reese, 795 S.W.2d at 84 (Appendix). The officers questioned Reese intermittently over a two-day period. The interviews were not excessive in length, and following each break in the interrogation process, the officers informed Reese of his Miranda rights. As the trial court found, "[Reese] was never deprived of food, drink or toilet facilities. He was never threatened or abused by the officers. He was allowed to visit with his family."

The trial court also rejected Reese's claim that the police coerced him into making the confession by eliciting his wife's assistance in obtaining the confession.  First, Reese's wife visited Reese at her own request.  Second, she did not relay any statements made by Reese to the police.  Third, Reese was aware that his wife had spoken to the police on the matter because she told him that the police wanted her help in obtaining his confession.  See Reese, 795 S.W.2d at 84 (Appendix).  Given these circumstances, we agree with the Missouri trial court that Reese's confession was voluntary.

**B.  Sixth Amendment**

We also agree with the Missouri Supreme Court's conclusion that Reese's Sixth Amendment rights were not violated when the police questioned him after he filled out a request for assistance from the public defender. The court stated:

> Counsel had not been appointed.  The defendant's eligibility for the public defender's services had not been determined. There was no request for counsel during interrogation.  There was, by contrast, an explicit waiver.  The authorities made it clear to the defendant, numerous times, that counsel would be available to him if he would only say the word.  The mere mention of counsel by the defendant is not sufficient to preclude further police questioning.  There must be a request.

Reese, 795 S.W.2d at 73 (internal footnote omitted).  Reese's application, at the most, amounted to a request for counsel at the preliminary hearing. An examination of the surrounding circumstances makes it clear that he did not request an attorney during the interrogation process.  In fact, he unequivocally stated that he did not want an attorney on several occasions. Thus, Reese's Sixth Amendment claim necessarily fails.

-11-

## V. Fourth Amendment Claim

Reese alleges that the district court erred in finding that his Fourth Amendment illegal arrest claim was procedurally barred. He contends that he was arrested without a warrant and without probable cause, and that the evidence seized on account thereof should have been suppressed. Reese waived this claim in the trial court and also failed to raise it on appeal. Thus, we will only review the merits of this claim if Reese establishes cause for his default and prejudice as a result thereof. Krimmel v. Hopkins, 56 F.3d 873, 876 (8th Cir.), cert. denied, 116 S. Ct. 578 (1995). Reese argues that cause is shown by his trial counsel's waiver of the claim and by his appellate counsel's failure to present the claim on appeal.

Although an ineffective assistance of counsel claim can constitute cause for a default, it must first be presented to the state court in a procedurally correct manner. Reynolds v. Caspari, 974 F.2d 946, 948 (8th Cir. 1992). Reese did not present his claim that trial counsel was ineffective in his post-conviction relief proceeding. Thus, the claim was defaulted and cannot form the basis for cause. Id.

Reese did properly present his ineffective assistance of appellate counsel claim in his motion to recall the mandate. See Hall v. Delo, 41 F.3d 1248, 1250 (8th Cir. 1994) (motion to recall mandate is proper procedure to bring allegations of ineffective assistance of appellate counsel). Thus, his ineffective assistance of appellate counsel claim must be evaluated under the Strickland test. Reese must overcome the strong presumption that his attorney's performance was objectively reasonable. See Strickland, 466 U.S. at 689.

Appellate counsel does not have a duty to raise every nonfrivolous claim on appeal. Sidebottom v. Delo, 46 F.3d 744, 759

(8th Cir.), <u>cert. denied</u>, 116 S. Ct. 144 (1995). Moreover, counsel has discretion to abandon losing issues on appeal. <u>Horne v. Trickey</u>, 895 F.2d 497, 500 (8th Cir. 1990). To show that his attorney was deficient in failing to raise the claim on appeal, Reese must show a reasonable likelihood that, but for his attorney's error, the result on appeal would have been different. <u>Blackmon v. White</u>, 825 F.2d 1263, 1265 (8th Cir. 1987).

A review of the record reveals that counsel raised twelve claims on appeal. It is apparent that counsel was familiar with Reese's case and with the legal issues relevant to the appeal. At the outset, we note that appellate counsel's effectiveness should be evaluated in light of the circumstances. To present this claim on appeal, appellate counsel would have had to overcome the hurdle of trial counsel's waiver. If the claim had been brought on appeal, it would have only been reviewed at the court's discretion and for plain error. Mo. Sup. Ct. Rule 29.12(b); 30.20. In these circumstances, counsel's decision to forgo the claim on appeal was entirely reasonable. <u>See</u> <u>Pollard v. Delo</u>, 28 F.3d 887, 889-90 (8th Cir.), <u>cert. denied</u>, 115 S. Ct. 518 (1994) (appellate counsel not ineffective for failing to raise claim for first time on appeal). Even if we assume, <u>arguendo</u>, that appellate counsel's performance was deficient in not presenting the claim on appeal, Reese would still not prevail on his illegal arrest claim, for there was ample evidence in the record to establish probable cause for Reese's arrest.[3]

---

[3]The district court noted the following facts that were known to the police officers at the time of the arrest:

> Petitioner was arrested when he refused to voluntarily accompany two law enforcement officers to the Squad headquarters to be fingerprinted and photographed. At that time, it was known that Petitioner had had a gun and ammunition similar to the kind used to kill four men, had recently used such ammunition, and smoked the same brand of cigarettes as found at the murder scene. Additionally, several of his statements were inconsistent

with the facts. For example, he had recently purchased a car and his explanation for the source of those funds, that he had been paid early, was refuted by the foreman of his employer. He also told the interviewing officers that he had sold his .30 caliber

# VI. Instructional Error

Reese presents two instances of instructional error. First, he contends that Missouri's reasonable doubt instruction violated his due process rights because it allowed the jury to convict him based on a lower burden of proof than that required by the Constitution. We have held, however, that such a challenge to Missouri's reasonable doubt instruction is barred by <u>Teague v. Lane</u>, 489 U.S. 288 (1989). <u>Murray v. Delo</u>, 34 F.3d 1367, 1382 (8th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 2567 (1995).

Reese also argues that Missouri's mitigating circumstances instruction violates <u>Mills v. Maryland</u>, 486 U.S. 367 (1988), and <u>McCoy v. North Carolina</u>, 494 U.S. 433 (1990), in that it requires that a finding of a mitigating circumstance must be unanimous. This contention is meritless. The Missouri Supreme Court has upheld the language of the mitigating circumstances instruction as constitutional under <u>Mills</u> and <u>McCoy</u>. <u>See</u> <u>State v. Petary</u>, 781 S.W.2d 534, 542-44 (Mo. 1989) (en banc), <u>vacated and remanded</u>, 494 U.S. 1075 (1990), <u>reaff'd</u>, 790 S.W.2d 243 (Mo.) (en banc), <u>cert. denied</u>, 498 U.S. 973 (1990). We have agreed with this holding. <u>Battle v. Delo</u>, 19 F.3d 1547, 1562 (8th Cir. 1994), <u>on reh'g</u>, 64 F.3d 347 (8th Cir. 1995), <u>cert. denied</u>, 116 S Ct. 1881 (1996); <u>Murray v. Delo</u>, 34 F.3d at 1381.

Reese further challenges the instruction on the ground that it states that the jury "may also consider any [mitigating] circumstances," arguing that the use of the permissive "may"

---

carbine to a stranger who approached him on the street outside a thrift shop as he was unloading his guns from the trunk of his car.

violates the holding of Hitchcock v. Dugger, 481 U.S. 393 (1987), that a jury may not refuse to consider any relevant mitigating evidence. The constitutional infirmity in the instruction in Hitchcock v. Dugger, however, lay in the fact that it restricted the jury to considering only the statutorily enumerated mitigating circumstances, in clear violation of the Court's holdings in Skipper v. South Carolina, 476 U.S. 1 (1986); Eddings v. Oklahoma, 455 U.S. 104 (1982); and Lockett v. Ohio, 438 U.S. 586 (1978). We agree with the Missouri Supreme Court's holding in State v. Petary, 781 S.W.2d at 543, that no such infirmity inheres in the instruction challenged here, for there was no exclusion of any mitigating evidence, and the jury was instructed that it must determine whether one or more mitigating circumstances existed which outweighed the aggravating circumstance or circumstances found to exist. Thus, rather than foreclosing the jury from considering evidence of mitigating circumstances, "`May consider' signifies that the jury is given discretion as to what weight the mitigating evidence should receive." Id.

## VII. Evidentiary Hearing

Finally, Reese contends that the district court erred in refusing to grant him an evidentiary hearing so that he could introduce evidence not presented to the state court in support of the previous grounds raised in this appeal. A habeas petitioner who has failed to develop evidence in state court is only entitled to an evidentiary hearing in federal court if he can establish cause for his failure to do so and prejudice resulting therefrom. Sidebottom, 46 F.3d at 750; see also Keeney v. Tamayo-Reyes, 504 U.S. 1, 8-9 (1992). No evidentiary hearing is warranted if the petitioner's claims are procedurally barred or are without merit. Wilson v. Kemna, 12 F.3d 145, 146 (8th Cir. 1994). Because all of Reese's claims can be disposed of on the state record, the district court did not err in its refusal to grant a hearing on the merits of the claims.

## VIII.  Conclusion

The remaining issues that Reese presented to the district court have either been abandoned on appeal or are without merit.

The order denying the petition for writ of habeas corpus is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.