No. 95-3652

Elroy Preston,                          *
                                        *
          Appellant,                    *    Appeal from the United States
                                        *    District Court for the
     v.                                 *    Eastern District of Missouri.
                                        *
Paul K. Delo, Warden,                   *
                                        *
          Appellee.                     *

                   Submitted:  September 10, 1996

                       Filed:  November 14, 1996

Before WOLLMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and
     HANSEN, Circuit Judge.

WOLLMAN, Circuit Judge.

     Elroy Preston, a Missouri inmate sentenced to death, appeals from the
district court's[1] denial of his 28 U.S.C. § 2254 petition.  We affirm.

                                   I.

     After a day of drinking and arguing at the home of Ervin Preston on
September 20, 1980, Willie "Pee Wee" Richardson and Betty Klein went
upstairs to bed, while Ervin, his brother Elroy Preston, and Elroy's
girlfriend, Sherry Brown, remained downstairs.  In the early morning hours
of September 21, Elroy Preston went upstairs and ordered Richardson and
Klein to go back downstairs.  When they were downstairs, Preston announced
that he would kill

---

[1]The Honorable Donald F. Stohr, United States District Judge
for the Eastern District of Missouri.

Richardson and Klein after he removed his clothes. After Preston undressed, he stabbed Richardson several times, killed Klein with a single stab wound to the neck (severing her spinal cord), then returned to the still-living Richardson and stabbed him several more times. When his victims were dead, Preston took some fried chicken, dipped it in their blood, and ate it while taunting the victims. Preston then dragged the bodies into an alley and attempted to clean up the house.

Preston was convicted of the capital murder of Richardson and the second-degree murder of Klein. His convictions were affirmed on direct appeal, see State v. Preston, 673 S.W.2d 1 (Mo.), cert. denied, 469 U.S. 893 (1984), and the denial of his motion for post-conviction relief was also affirmed on appeal. See Preston v. State, 736 S.W.2d 53 (Mo. Ct. App. 1987), cert. denied, 484 U.S. 1020 (1988). The Missouri Supreme Court subsequently denied Preston's petition for a writ of habeas corpus and his motion to recall the mandate. State ex rel. Preston v. Delo, No. 75519 (Mo. 1993) (unpublished) (habeas petition); State v. Preston, No. 64186 (Mo. 1993) (unpublished) (motion to recall the mandate).[2] Preston alleged more than 250 grounds for relief in his section 2254 petition filed in the district court. The district court concluded that the vast majority of Preston's claims were procedurally barred and rejected his remaining claims on their merits.

## II.

Preston's primary argument on appeal is that the district

---

[2]Preston filed a second Rule 91 habeas petition in 1995. The Missouri Supreme Court denied this petition, stating that all claims presented in it were procedurally defaulted. State ex rel. Preston v. Delo, No. 77812 (Mo. 1995) (unpublished). The 1995 petition and the court's order are part of the record in this appeal, but Preston makes no arguments regarding his 1995 petition. Hence, our opinion will refer only to his 1992 petition.

court erroneously ruled that his Brady[3] claim was procedurally barred.[4] Preston contends that the prosecutor prevented him from reviewing and presenting Ervin Preston's medical records at trial. These records show that Ervin was treated in 1974 for severe alcoholism and suggest that he suffered from auditory hallucinations, blackouts, and memory problems. The records were in court on the day of trial, subpoenaed by Preston, but the trial court ruled they were inadmissible because of remoteness in time and denied Preston access to the records. Preston argues that these records could have impeached Ervin's ability to clearly discern and to recall, after a day of drinking, whether Preston was sober and knew what he was doing at the time of the murders, as Ervin so testified. Preston places great emphasis on Ervin's perceptive ability because Preston's lack of mental capacity to commit capital murder was the defense at trial. During the direct appeal and state post-conviction proceedings, none of Preston's attorneys ever obtained and reviewed these records. Preston's counsel in this habeas action was the first to do so.

Preston first presented his Brady claim to the Missouri Supreme Court in a Missouri Supreme Court Rule 91 habeas petition

---

[3]See Brady v. Maryland, 373 U.S. 83 (1963); United States v. Bagley, 473 U.S. 667 (1985).

[4]The State argues that this appeal is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 104, 110 Stat. 1214, 1218-19 (April 24, 1996), which amended section 2254. It urges us to follow the Seventh Circuit's decision in Lindh v. Murphy, 96 F.3d 856, 865-67 (7th Cir. 1996) (en banc), petition for cert. filed, (Oct. 14, 1996) (No. 96-6298) (Act's amendments codified at section 2254(d) apply to pending cases). We have not yet taken a position on whether the amendments to section 2254 apply to cases that were pending on April 24, 1996. See Oliver v. Wood, 96 F.3d 1106, 1108 n.2 (8th Cir. 1996); Rehbein v. Clarke, 94 F.3d 478, 481 n.4 (8th Cir. 1996). Because most of Preston's claims are either procedurally barred or fail under the more lenient provisions of the old law, we leave the decision of the issue presented by the State to a more appropriate case.

in December 1992. On January 25, 1993, the court summarily denied Preston's petition, stating only: "Now at this day, on consideration of a petition for writ of habeas corpus to the said respondent, it is ordered by the court [h]ere that the said petition be, and the same is hereby denied." Based on this order, the district court ruled that Preston procedurally defaulted his Brady claim in the state courts.

Preston argues that his claim is not procedurally barred because the Missouri Supreme Court reviewed the merits of his Brady claim. He cites two reasons: First, because roughly four weeks elapsed between the time he filed his Rule 91 petition and its denial, and second, because his claim of newly discovered evidence was a proper basis for a state habeas claim. See State ex rel. Simmons v. White, 866 S.W.2d 443, 446 (Mo. 1993) (en banc) (Rule 91 petition "may be used to challenge a final judgment after an individual's failure to pursue appellate and post-conviction remedies *only* to raise jurisdictional issues or in circumstances so rare and exceptional that a manifest injustice results."); Wilson v. State, 813 S.W.2d 833, 834-35 (Mo. 1991) (en banc) (newly discovered evidence can be basis for Rule 91 petition).

Prior to the decision in Simmons, we decided Byrd v. Delo, 942 F.2d 1226 (8th Cir. 1991), a case involving the Missouri Supreme Court's summary denial of a Rule 91 habeas petition with the same language as used in this case. We stated, "[a]fter Coleman [v. Thompson, 501 U.S. 722 (1991)], there is simply no reason to construe an unexplained Rule 91 denial as opening up the merits of a previously defaulted federal issue," because such a denial rests on the Missouri procedural rule that Rule 91 cannot be used to raise claims that could have been raised on direct appeal or in a timely motion for post-conviction relief. Byrd, 942 F.2d at 1232. Both before and after Simmons, we have consistently followed Byrd's rule regarding unexplained denials of Rule 91 petitions. See Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996); Charron v. Gammon, 69

F.3d 851, 857 (8th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 2533 (1996); <u>Anderson v. White</u>, 32 F.3d 320, 321 n.2 (8th Cir. 1994); <u>Battle v. Delo</u>, 19 F.3d 1547, 1561 (8th Cir. 1994) (subsequent history omitted); <u>Blair v. Armontrout</u>, 976 F.2d 1130, 1136 (8th Cir. 1992), <u>cert. denied</u>, 508 U.S. 916 (1993).

Preston argues that these cases following <u>Byrd</u> are distinguishable because none of them involved a claim of newly discovered evidence suppressed by the prosecutor. We disagree. We see no reason to deviate from the rule enunciated in <u>Byrd</u>, and we decline to create a new body of case law making distinctions between the Missouri Supreme Court's unexplained summary denials of Rule 91 petitions in various cases.

In any event, to the extent we can read meaning into the Missouri Supreme Court's order, we find that the summary denial rested on Missouri's procedural rules. While a claim of newly discovered evidence is cognizable in a Rule 91 petition, the Missouri Supreme Court has also stated that to avoid a procedural default a habeas petitioner "would have to establish that the grounds relied on were not `known to him' while proceeding" on his normal post-conviction relief motion. <u>White v. State</u>, 779 S.W.2d 571, 572 (Mo. 1989) (en banc); <u>see also</u> <u>State ex rel. Simmons</u>, 866 S.W.2d at 446-47; <u>Reese</u>, 94 F.3d at 1181; <u>Sloan v. Delo</u>, 54 F.3d 1371, 1382 (8th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 728 (1996). Preston argues that Ervin's medical records are newly discovered. He also argues that the prosecutor misled Preston's counsel by misrepresenting the contents of the records as relating only to Ervin's diabetes. To the contrary, the trial transcript shows that Preston's attorney knew that the medical records related to Ervin's alcoholism and possible psychiatric problems. Simply put, the basis of Preston's <u>Brady</u> claim was known to him from the day of his trial, and there is no evidence in the record that it could not have been further investigated and raised in his direct appeal or post-conviction relief motion.

Preston can lift the procedural bar to his <u>Brady</u> claim if he shows cause and actual prejudice. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Reese</u>, 94 F.3d at 1182. Preston alleges as grounds for cause state interference, the ineffective assistance of trial and appellate counsel, and mental illness during the pendency of his state court proceedings. Even if we were to assume in this case that any of these grounds could serve as cause, Preston has failed to demonstrate that he was actually prejudiced. "`To demonstrate prejudice, a petitioner must show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire [trial] with error of constitutional dimensions."'" <u>Charron</u>, 69 F.3d at 858 (quoting <u>Jennings v. Purkett</u>, 7 F.3d 779, 782 (8th Cir. 1993) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982))); <u>see also</u> <u>Zinzer v. Iowa</u>, 60 F.3d 1296, 1299 n.7 (8th Cir. 1995).

We have reviewed the medical records in question, and we conclude that they would have had only marginal impeachment value. As the trial court ruled, the records are remote in time and there is no evidence that the problems for which Ervin was treated reoccurred between 1974 and the time of the killings in 1980. Furthermore, Preston's trial counsel attempted to impeach Ervin by questioning him about his alcoholism, his drinking on the day of the murders, his vague and internally inconsistent testimony, and the serious conflicts between his testimony and that of Sherry Brown. Moreover, the State did not rely solely on Ervin's statements that Preston was sober and knew what he was doing to prove Preston's mental capacity to commit capital murder.[5]

---

[5]The State relied heavily on the facts of the crime: After arguing with his brother about a matter related to the two victims, Preston went upstairs, got the victims out of bed, brought them downstairs, cut the wire to the telephone, and briefly argued with them. He told them he would kill them as soon as he undressed, and then undressed and killed them, twice stabbing Richard multiple times. Preston then disposed of the bodies, cleaned up the blood in the house, and disposed of blood-soaked evidence. He drove his girlfriend home, then returned and tried to sleep until police officers arrived and he let them into the house. The State also relied on the lack of evidence that Preston suffered from a mental disease or defect; the existence of motive, based on Preston's

Therefore, we conclude that Preston has not demonstrated he was actually prejudiced by his inability to use Ervin's medical records at trial or counsel's failure to raise the issue on appeal.

Finally, the district court did not abuse its discretion in declining to hold an evidentiary hearing on either the procedural bar issue or on the merits of Preston's claim.  See Keeney v. Tamayo-Reyes, 504 U.S. 1, 11-12 (1992); Sidebottom v. Delo, 46 F.3d 744, 750 (8th Cir.), cert. denied, 116 S. Ct. 144 (1995).

## III.

Preston alleges five instances of prosecutorial misconduct violating his right to due process, which stemmed from the prosecutor's closing arguments at the guilt and penalty phases of the trial.  Four of the five claims were defaulted in state court because they were not presented on direct appeal or developed in collateral proceedings.  Nave v. Delo, 62 F.3d 1024, 1030 (8th Cir. 1995), cert. denied, 116 S. Ct. 1837 (1996).  Preston argues that the Missouri Supreme Court reviewed the merits of these claims in considering his 1992 Rule 91 habeas petition.  We reject his argument on this point for the same reasons we rejected his argument regarding his Brady claim.  See section II, supra.  Preston has not shown cause for his default, much less actual prejudice, and these four claims are procedurally barred.

---

arguments with the victims earlier that day; and the testimony of two police officers who observed Preston at the house after the murders, one of whom spoke with Preston.

The only claim preserved for our review[6] stems from the prosecutor's penalty-phase closing argument, in which he stated:

> You know, recently, in New York, Norman [Mailer's] protege, after being paroled for murder . . . murdering another individual . . . and the -- the photograph of the victim in that particular case, though not particularly eloquent, after the defendant was again sentenced, said, you know, this was in New York, he said, people of New York, people of New York, what do you do at the end of the day with the garbage that you have accumulated? . . . You throw it out. You don't take it home and put it in your refrigerator.

Preston argues that the reference to a paroled murderer who killed again, combined with the statements in his procedurally defaulted claims, "so frightened and inflamed the jury that a reasoned and responsible determination of the sentence to be imposed was impossible."

We will consider only the specific statement quoted above, and not the defaulted statements, because the prosecutor's statement stood on its own. This distinguishes this case from Miller v. Lockhart, 65 F.3d 676 (8th Cir. 1995), in which we considered the prosecutor's entire penalty-phase closing argument because that prosecutor's argument created an "interwoven theme" culminating with the comment leading to the defendant's objection raising the entire, "interconnected," line of argument. Id. at 683. Here, Preston objected to the prosecutor's statement in isolation and not in relation to any related line of argument.

---

[6]We conclude that this claim was preserved, despite the district court's unexplained ruling that the claim was procedurally barred. The State's brief argues the merits of this claim. See Sidebottom, 46 F.3d at 756-57 (rejecting claim on its merits despite district court's erroneous finding that claim procedurally defaulted).

Whether an improper closing argument at the penalty phase of a trial rises to the level of a due process violation is determined by

> (1) measur[ing] the type of prejudice that arose from the argument; (2) examin[ing] what defense counsel did in [counsel's] argument to minimize the prejudice; (3) review[ing] jury instructions to see if the jury was properly instructed; and (4) determin[ing] if there is a reasonable probability that the outcome of the sentencing phase would have been different, taking into account all of the aggravating and mitigating circumstances.

Antwine v. Delo, 54 F.3d 1357, 1363 (8th Cir. 1995), cert. denied, 116 S. Ct. 753 (1996); Miller, 65 F.3d at 683. We examine the totality of the circumstances in determining whether there is a reasonable probability that the error complained of affected the outcome of the sentencing phase. Newlon v. Armontrout, 885 F.2d 1328, 1338 (8th Cir. 1989), cert. denied, 497 U.S. 1038 (1990).

We conclude that this case does not present a close question, and thus we will not go through each element of the Antwine test. Rather, turning to the ultimate question, we conclude that there is no reasonable probability that this statement more than minimally affected the outcome of the sentencing phase and that the comment did not "`so infect[] the [sentencing phase] with unfairness as to make the resulting [sentence] a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (alterations added) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); Six v. Delo, 94 F.3d 469, 477 (8th Cir. 1996). Preston objected only to the reference to Norman Mailer's protege. That reference does not equate with the comparison between the defendant and notorious mass murderers that was a part of the improper argument in Newlon, 885 F.2d at 1342, but rather was merely a lead-in for the prosecutor's argument regarding the quote about throwing away garbage. The prosecutor's garbage comment was mean-spirited and unnecessary; he should have confined himself to arguing the facts of the case and

-9-

the aggravating circumstances justifying the death penalty, rather than employing a dehumanizing comparison of Preston to a useless, discardable object. Although we strongly disapprove of the prosecutor's comments, we conclude that the challenged reference to Norman Mailer's protege did not make Preston's sentencing phase fundamentally unfair or its result unreliable.

## IV.

Preston contends that trial counsel was ineffective in several respects, each of which was rejected by the district court. An ineffective assistance claim presents a mixed question of law and fact; we review the district court's factual findings for clear error, and its legal conclusions de novo. Sidebottom, 46 F.3d at 752. To prevail, Preston must establish that counsel's performance was deficient and that he was prejudiced by that deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). We conclude that Preston's attorneys did not perform deficiently regarding any of Preston's claims, and accordingly we do not reach the prejudice issue.

## A.

Preston argues that his attorneys were ineffective for failing to present to examining psychiatrists and the jury information that he may have been under the influence of phencyclidine hydrochloride (PCP) on the day of the murders. The Missouri courts rejected this claim, finding that the evidence supported the conclusion that Preston did not tell counsel of his drug use, that counsel could not have independently discovered such drug use, and that Preston denied drug use to the psychiatrists. Preston, 736 S.W.2d at 55.

Like the district court, we defer to the state court's factual findings, as they find support in the record made at the post-conviction relief hearing. See 28 U.S.C. § 2254(d) (1994). The

-10-

record reveals that Sherry Brown did not disclose possible marijuana and PCP use to Preston's counsel until the week before the post-conviction relief hearing. Preston himself was unsure of whether he had actually used PCP the day of the murders, and he twice testified that he had not told either the psychiatrists or his own lawyers that he had used PCP the day of the murders. Both psychiatrists retained by Preston denied knowledge of his drug use, and they stated that Preston affirmatively denied using drugs. In light of the finding that counsel did not possess information regarding Preston's drug use and could not have learned of this information, counsel did not perform deficiently regarding the PCP issue.

## B.

Preston argues that counsel failed to inform him of his right to testify and that counsel prevented him from testifying at the second phase of his trial. Based on the testimony developed at the post-conviction relief hearing, the Missouri Court of Appeals and the district court rejected these claims. We do likewise. The hearing transcript shows that both of Preston's attorneys discussed his right to testify with him. Preston admitted that he knew he had a right to testify at the penalty phase of the trial and could have told the judge that he wanted to do so. Preston clearly knew of his right to testify, and there is nothing in the record to indicate that counsel prevented him from doing so.

## C.

Finally, Preston argues that counsel was ineffective for failing to present any evidence at the penalty phase of the trial. Preston argues that counsel should have presented his testimony, the testimony of family members, and that of mental health experts. Although the decision not to present any evidence at the sentencing phase of a capital trial is one not lightly to be made, there is no

per se rule that a failure to present such evidence constitutes ineffective assistance. Laws v. Armontrout, 863 F.2d 1377, 1382, 1386 (8th Cir. 1988) (en banc), cert. denied, 490 U.S. 1040 (1989). Counsel's decision in this case was the product of reasonable investigation and trial strategy and did not constitute deficient performance. See id. at 1382-82 ("[T]he decision not to present evidence at the penalty phase is well within the range of practical choices that are not to be second-guessed, as long as they are based on informed and reasoned judgment.").

Peter Stragand was the attorney responsible for presenting Preston's penalty-phase defense. He testified that he did not put Preston on as a witness because he thought Preston was "too quiet" and would be a bad witness. Stragand testified that he did not think that the jury did not like Preston or had a "bad feeling towards [Preston] as a person." Stragand testified that he did not call Sherry Brown to testify because she had already testified twice in the guilt phase of the trial and he did not think she would be helpful at the penalty phase. Viewing Stragand's decisions as of the time they were made, see Strickland, 466 U.S. at 689-90, his decisions regarding whether to call Preston or Brown were strategic choices based on a reasonable evaluation that Preston and Brown would not have been effective witnesses. Cf. Burger v. Kemp, 483 U.S. 776, 791-92 (1987) (counsel reasonably concluded that it was unwise to put defendant on stand because defendant never expressed remorse and might have bragged about crime, causing jury to view him as indifferent or worse).

Preston's family members were contacted before trial. Although Stragand did not explain at the post-conviction hearing why he did not call them to testify, counsel was aware that Preston had had a history of violence towards his family members. Preston had been abusive towards his wife, had damaged his mother's home, and had kicked the windows out of his father's car. His mother had kicked him out of her house shortly before the murders out of fear

that Preston would harm family members. Stragand's investigation was not inadequate, and he could reasonably have concluded that Preston's family members would not have been effective witnesses and might have introduced harmful facts. See Burger, 483 U.S. at 792 (counsel reasonably decided not to call defendant's mother to testify because proposed testimony would not have helped and would have introduced damaging historical facts); Schneider v. Delo, 85 F.3d 335, 341 (8th Cir. 1996), petition for cert. filed, (Oct. 18, 1996) (No. 96-6372) (counsel's decision not to call family members was reasonable because they were "weak and offered little" and because counsel determined they were too upset by guilty verdict to be effective witnesses); Laws, 863 F.2d at 1390-91 (family members refused to testify on Laws's behalf, and testimony would have revealed the relatives' total lack of support for Laws). Furthermore, the record does not reveal what Preston's family members would have testified to, so we have no basis upon which to find that Stragand's judgment on this point was erroneous. Cf. Burger, 483 U.S. at 792-93 (where nothing was in record regarding potentially mitigating nature of proposed witness's testimony, the state of the record "d[id] not permit" the court to reach the conclusion that counsel's judgment was erroneous).

Both of Preston's attorneys testified that they had planned to call two mental health experts who had examined Preston to testify during the penalty phase of the trial. One of Preston's doctors diagnosed Preston as suffering from alcohol amnestic disorder, which, while not preventing Preston from knowing right from wrong, would impair his ability to willfully and deliberately take some actions. Preston's doctors agreed there was also some evidence that Preston had some mental abnormality or impairment related to his alcohol use.

Regardless of whether the doctors' testimony was of some potential value, Stragand made an informed decision, after deliberation and consultation with co-counsel, not to present their

-13-

testimony.  The State also had two doctors who had examined Preston, both of whom concluded that Preston had no mental disease or defect, nor any mental impairment at the time of the crime.  Stragand testified that essentially it would have been Preston's doctors versus the State's doctors.  Furthermore, Stragand knew that if he called Preston's doctors to testify, they would be subject to cross-examination regarding the bases of their opinions.  This cross-examination would have revealed Preston's prior history of violence toward his family and Sherry Brown; Preston's claims that he could not remember the crime, that he was not there, that he did not know the victims, and that his brother Ervin was framing him; Preston's prior violent criminal history (although some of this came in through the State's evidence); Preston's past violence towards persons and property; and Preston's history of alcohol-related blackouts and outbursts of temper.

Counsel can reasonably decide not to present potentially helpful mitigating evidence—including the testimony of mental experts—if such evidence would result in the introduction of damaging evidence.  <u>See Burger</u>, 483 U.S. at 792; <u>Darden v. Wainwright</u>, 477 U.S. 168, 186 (1986); <u>Strickland</u>, 466 U.S. at 699; <u>Six</u>, 94 F.3d at 474; <u>Whitmore v. Lockhart</u>, 8 F.3d 614, 617 (8th Cir. 1993); <u>Laws</u>, 863 F.2d at 1389-90.  Stragand's decision not to present Preston's doctors' testimony in this case was reasonable  because of the damaging evidence that would have been brought out on cross-examination.

Many of Stragand's strategic decisions regarding his handling of the penalty phase were influenced by his theory about the jury's mindset.  He and his co-counsel both testified they thought that the jury had decided not to sentence Preston to death.  In addition to Stragand's belief that the jury did not have a "bad feeling" towards Preston, Stragand testified that he believed the verdicts indicated that the jury, which knew from voir dire that this was a death penalty case, had reached a compromise.  Stragand's theory

was that because the murders were committed contemporaneously they were of equal culpability. Thus, when the jury returned a verdict of capital murder on only one count and of second-degree murder on the other, it had reached a compromise and would not vote to sentence Preston to death. While Stragand's "feel" for the jury may have been wrong, it was the contemporaneous product of having investigated, prepared, and tried the case. It is wrong only in hindsight and is not the basis for a finding of deficient performance. See Laws, 863 U.S. at 1393 ("In examining counsel's performance, we do not use 20-20 hindsight."); cf. Strickland, 466 U.S. at 673, 699 (counsel's unsuccessful strategy for sentencing-phase argument relied in part on judge's reputation for placing importance on a defendant owning up to crime).

## Conclusion

The judgment is affirmed. We thank counsel for her zealous efforts on Preston's behalf.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.