# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1891

_____

Ricky L. Wilcox,         *
                *
   Petitioner - Appellant,     *
                *  Appeal from the United States
v.               *  District Court for the
                *  District of Nebraska.
Frank X. Hopkins, Warden,    *
Nebraska State Penitentiary,    *
                *
   Respondent - Appellee.    *

_____

Submitted:  December 13, 2000

Filed:  May 1, 2001

_____

Before LOKEN and HEANEY, Circuit Judges, and BATTEY,[*] District Judge.

_____

LOKEN, Circuit Judge.

In September 1995, Ricky L. Wilcox exchanged gunfire with two police officers in the corridor outside his apartment in Kearney, Nebraska.  The State charged him with two counts of attempted second-degree murder, two counts of using a weapon to commit a felony, being a felon in possession of a firearm, and being a habitual criminal.  Some months later, Wilcox pleaded guilty to two counts of attempted second-degree

_____

[*]The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation.

murder and one count of using a weapon to commit a felony. After the state courts affirmed the conviction on direct appeal and rejected Wilcox's petition for post-conviction relief, he filed this federal habeas petition, claiming that his guilty plea was involuntary and the product of ineffective assistance of counsel. The district court[1] denied the petition, and Wilcox appeals. We affirm.

## I.

Wilcox first argues that his trial attorneys provided ineffective assistance when they persuaded him to plead guilty before obtaining a defense expert's ballistic analysis of the crime scene. To succeed on this claim, Wilcox must show ineffective assistance -- that counsel's representation fell below an objective standard of reasonableness -- and prejudice -- "a reasonable probability that, but for counsel's errors, [Wilcox] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The district court concluded Wilcox failed to show prejudice. Wilcox argues the expert's analysis supported his claim of self defense, and thus he would have gone to trial had he known of this evidence at the time he pleaded guilty. Review of this contention requires a closer look at the state court record.

After Wilcox pleaded not guilty at his initial arraignment, appointed counsel -- two Buffalo County deputy public defenders -- hired a forensics expert at County expense to analyze the crime scene. Before Wilcox saw the expert's report, however, counsel negotiated and Wilcox accepted a plea agreement in which the State agreed to dismiss one count of using a weapon to commit a felony, the felon-in-possession count, the habitual criminal count, and a prior unrelated felony charge of driving under suspension. Wilcox agreed to plead guilty (no contest) to two counts of attempted

---

[1]The HONORABLE WARREN K. URBOM, United States District Judge for the District of Nebraska, adopting the recommendation of the HONORABLE DAVID L. PIESTER, United States Magistrate Judge for the District of Nebraska.

second-degree murder and one count of using a weapon to commit a felony. The plea agreement further provided that the State would recommend a sentence within the range of two to one hundred years. This would be less than Wilcox's potential sentence because each count called for a sentencing range of one to fifty years, and the three counts could be sentenced consecutively.

Wilcox next appeared for re-arraignment and a change of plea. After confirming that he understood the rights he would give up by pleading guilty, the court asked the prosecutor to state the factual basis for a guilty plea. The prosecutor summarized the State's evidence: after receiving complaints that Wilcox had caused a disturbance at a local bar and fired shots on his way home, two police officers entered Wilcox's apartment building and heard a commotion and a gunshot from within his apartment. The officers took up a position near a fire door. Wilcox emerged from the apartment with a handgun. The officers told him to drop the weapon. Wilcox fired several shots at the officers, who suffered minor injuries. When the officers returned his fire, Wilcox retreated into the apartment and fired one or more shots from behind the door. He was eventually talked out of the apartment, taken into custody, and interviewed. He admitted he fired the first shot and knew the two men were police officers.

Wilcox then told the court he disagreed with the prosecutor's statement -- the officers fired first, he did not know they were police, and he was drunk at the time. The court advised Wilcox that, if these facts were found by a jury, "you could have an affirmative defense of self defense to these charges." The court then asked Wilcox if he still wanted to plead guilty, "[k]nowing that you would have a potential defense to . . . the charges." When Wilcox responded affirmatively, the court accepted his guilty plea to three counts, consistent with the plea agreement. The court also agreed to meet with Wilcox before sentencing to give him an opportunity to make a "personal statement to the Court."

That meeting took place one month later, on the record and with counsel present. Wilcox played the forensic expert's videotaped report for the court. He also complained about trial counsel's efforts and asked the judge to be lenient in sentencing. But neither Wilcox nor his attorneys moved to withdraw the guilty plea. The next day, the court sentenced him to consecutive terms of twenty to forty years on each count of attempted second-degree murder, and five additional years on the firearm count.

On this record, we agree with the district court that Wilcox failed to establish prejudice. First, at the time of the re-arraignment hearing, when the trial court advised Wilcox that his account of the incident would support a claim of self-defense, Wilcox knew a defense expert had been retained. Yet he chose to enter a guilty plea without seeing the expert's report. Second, although the expert's report raised questions about some aspects of the shooting incident, the expert was unable to determine who fired the first shot, a critical question to the claim of self-defense. Thus, the expert's inconclusive report did not refute Wilcox's own admission, made immediately after the shooting, that he fired the first shot and knew the men were police officers. Third, after presenting the expert's report to the court the day before sentencing, Wilcox stated that he was placing his trust in the court "to make a judgment call on your own" at sentencing. He did not attempt to withdraw his guilty plea. In these circumstances, Wilcox's post-conviction claim -- that he would not have pleaded guilty if his attorneys had provided more timely access to the expert's report -- is simply not credible.

**II.**

Wilcox next argues his due process rights were violated because the trial court accepted an involuntary guilty plea. In support, Wilcox relies upon his responses to the court's examination at his change-of-plea hearing. Early in the examination, when asked if he understood the presumption of innocence his guilty plea would waive, Wilcox replied, "I don't understand a lot of this thing at all." The court then carefully explained the presumption of innocence and the other rights waived by a guilty plea,

telling Wilcox, "I want you to understand everything I'm talking to you about and as we go through this, then you can ask questions, and we'll try to explain it to you, okay?" With each explanation, Wilcox expressed complete understanding. (This was not the first time he had pleaded guilty to a felony charge.)

Later in the examination, Wilcox expressed dissatisfaction with his attorneys' efforts and said they had threatened him with the likelihood of a lengthier sentence as a habitual criminal if he did not accept the plea agreement. The court explained that defense counsel have an obligation "to tell you what is the worst case scenario," and to give advice consistent with their professional judgment as to the client's best interests, but Wilcox must make the final decision whether to plead guilty. Again, Wilcox said he understood. Finally, Wilcox relies on his stated disagreement with the prosecutor's summary of the factual basis for a guilty plea. But after the court explained that Wilcox's version of the incident would support a claim of self defense, he said he understood and still wanted to plead guilty. The court then accepted the guilty plea, finding that it was "knowingly, voluntarily, and intelligently entered," and that each count was supported by an adequate factual basis.

The district court concluded that Wilcox's plea was valid because he understood the trial judge's explanations and advice and voluntarily accepted the plea agreement. We agree. A no-contest guilty plea is valid if "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The threat of a heavier sentence does not a render a plea involuntary. Brady v. United States, 397 U.S. 742, 758 (1970). Thus, the state court's decision to accept Wilcox's plea as knowing and voluntary was neither contrary to clearly established federal law nor an unreasonable determination in light of the facts presented to that court. See 28 U.S.C. § 2254(d).

Wilcox also argues his appointed counsel on direct appeal was ineffective in failing to challenge the voluntariness of the guilty plea. To prevail on this claim,

Wilcox "must show . . . that, but for his attorney's error, the result on appeal would have been different." Reese v. Delo, 94 F.3d 1177, 1185 (8th Cir. 1996). Because Wilcox's plea was knowing and voluntary, he cannot establish that the result of his direct appeal would have been different if appellate counsel had challenged the plea.

**III.**

Finally, Wilcox argues that he was entitled to an evidentiary hearing in the district court. We disagree. Regarding the claim of ineffective assistance of trial counsel, the state court record establishes that Wilcox was not prejudiced by pleading guilty before he saw the ballistic expert's report. The record does not reveal what advice counsel gave Wilcox as to the likely sentencing consequences if he pleaded guilty instead of going to trial. However, in the state court proceedings, Wilcox "failed to develop the factual basis of a claim" of that nature by coming forward with affidavit evidence tending to show that inadequate or inaccurate advice was given. 28 U.S.C. § 2254(e)(2). Moreover, the state court advised Wilcox at his initial arraignment of the maximum prison terms for each of the counts initially charged.[2] At the re-arraignment hearing, the court explained the applicable minimum and maximum terms for each of the three counts to which Wilcox pleaded guilty (one to fifty years on each count), as well as the State's agreement to recommend a sentencing range of two to one hundred years in prison. "[A] defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences." United States v. Granados, 168 F.3d 343, 345 (8th Cir. 1999); see Thomas v. United States, 27 F.3d 321, 326 (8th Cir. 1994). Thus, it is apparent from the state court record that Wilcox was adequately advised as to the impact of the plea agreement on sentencing, and he was not entitled to an evidentiary hearing in federal court.

---

[2]The court advised that Wilcox would face a sentence of ten to sixty years on each of the other five counts if he was convicted of being a habitual criminal. Thus, the plea agreement conferred a substantial sentencing benefit by dropping that charge.

The judgment of the district court is affirmed.

HEANEY, Circuit Judge, dissenting.

Because I believe the majority too quickly concludes that Wilcox was not prejudiced by counsel's rush toward a guilty plea, I respectfully dissent. In my view, the majority overstates the significance of Wilcox's failure to move to withdraw his plea and minimizes the import of Hauge's ballistics analysis. Given Wilcox's conspicuous reluctance to accept the plea agreement proffered by the prosecution, I believe he would have seized upon even the slightest evidentiary support for a claim of self-defense. Although Hauge's report does not conclusively identify the first shooter, it seems to me to be a foundation for creating reasonable doubt of Wilcox's guilt, and as such could well have tipped a vacillating Wilcox to reject his attorneys' rush to a guilty plea.

Wilcox's allegations, if true, describe a violation of counsel's "dut[y] to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." Strickland v. Washington, 466 U.S. 668, 688 (1984). I would therefore remand to the district court for further inquiry into this ineffective-assistance claim.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.