Robert C. FOLEY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 1997–SC–1098–MR, 1998–SC–0378–MR and 1998–SC–0379–MR.

Supreme Court of Kentucky.

March 23, 2000.

As Modified on Denial of Rehearing June 15, 2000.

Kathleen K. Schmidt, Shepherdsville, Randall L. Wheeler, Assistant Public Advocate, Frankfort, Counsel for Appellant.

A.B. Chandler III, Attorney General, Connie Vance Malone, Assistant Attorney General, Susan Roncarti, Assistant Attorney General, Paul D. Gilbert, Assistant Attorney General, Criminal Appellate Division, Frankfort, Thomas V. Handy, Commonwealth Attorney, London, Counsel for Appellee.

WINTERSHEIMER, Justice.

This appeal is from a denial of a RCr 11.42 motion seeking the vacation of two murder convictions and sentences of death because of allegations of ineffective assistance of counsel.

In 1993, the Laurel Circuit Court imposed two death sentences on Foley pursuant to convictions for the murders of two people. In that case, Foley set out 26 allegations of error seeking a reversal of his conviction. After reviewing the record, the briefs and hearing oral arguments, this Court affirmed the conviction in *Foley v. Commonwealth*, Ky., 942 S.W.2d 876 (1997).

The events that culminated in the violent deaths of the two Vaughn brothers occurred on the evening of August 17, 1991, when ten other adults were at the home of Foley, along with five children. Other male guests had checked their pistols in the kitchen cabinet, but Foley kept his .38 colt snub-nose revolver concealed in the small of his back, under his belt and shirt. The first victim consumed enough alcohol to become belligerent and two fights erupted between Foley and the first victim. Foley admits that he started the first fight and later in the evening shot and killed the first victim. The deceased received multiple gunshot wounds to the left arm and body which resulted in hemorrhaging and death. Foley claims he acted in self-defense. Shortly thereafter, the

second victim was killed at a time when only Foley, the victim and Ronnie Dugger remained inside the house. Foley claims that Dugger shot the victim while Dugger testified that Foley shot the victim in the back of the head. The victim died as a result of multiple penetrating and perforating gunshot wounds to the head and extremities. After the killings, Foley, Dugger and two other individuals dumped the bodies into a creek in Laurel County.

As noted in the opinion of the Court in *Foley, supra,* Foley was charged on October 26, 1991, with killing four other people whose bodies had been found in a septic tank in Laurel County. Prior to the indictment on the later charges, the district court had restrained all law enforcement personnel and court personnel from making any public comment about the case.

After this Court affirmed the jury verdict in 1997, Foley filed an unsuccessful petition for a writ of certiorari in the United States Supreme Court. Three days after that denial he faxed to the Laurel Circuit Court a motion pursuant to RCr 11.42 to vacate his judgment of conviction. That motion was filed by the Clerk on October 14, 1997, and on that same date, the Governor signed an executive order that Foley be put to death by electrocution on November 13, 1997. The circuit court refused a stay of execution and scheduled an evidentiary hearing on the RCr 11.42 motion on November 10, 1997, which was three days before the scheduled execution. This Court granted a stay of execution on November 3, 1997. Before the evidentiary hearing began on November 10, counsel for Foley renewed his motion for continuance which was denied. The RCr 11.42 motion was denied on November 25, 1997. This appeal followed.

## I. Mitigating Evidence

Foley argues that his death sentence must be vacated because his trial attorney did not investigate and present to the jury all available evidence which would mitigate a finding that he deserved the death penalty. He asserts that evidence was available to trial counsel which would have proved relevant mitigation in the penalty phase of the trial, but his attorney did not conduct an adequate investigation of the available mitigating evidence and presented no evidence in mitigation. At his RCr 11.42 hearing, Foley presented twelve witnesses who would have been available to offer similar mitigating evidence at trial. He also claims that trial counsel did not properly explain the mechanics of the penalty phase, including the concept of mitigation so that Foley could make a rational choice and properly assist in his own defense.

At the RCr 11.42 hearing, trial counsel testified that he and Foley had discussed the penalty phase and that Foley did not want to put family witnesses through the ordeal of testifying. There was no testimony that Foley knew of any witnesses who possessed critical mitigating information evidence in the penalty phase.

The witnesses who testified at the RCr 11.42 hearing indicated that Foley was a lovable child and that he idolized his grandfather who was a seven-time murderer. One of the Foley witnesses testified that he was nice even though he carried a gun and had been convicted earlier of manslaughter. His mother testified that her father had killed seven men and had taught Foley to shoot a gun when he was only 6 years old. His mother also discussed some alleged injuries that Foley sustained, the implication being that there was some sort of brain damage. That inference was never substantiated by any medical record. Testimony regarding the injuries has no relevance to mitigation. Her testimony that he could be fine one minute and very angry the next certainly did not mitigate the propensity for violence. At the end of her testimony, she identified two different photographs of Foley with guns. The persuasive mitigation of this testimony is highly questionable.

Foley's brother testified about his brother's violent nature and how well he could

handle a gun. He admitted on cross-examination that Foley could be violent, and that people were afraid of Foley.

Trial counsel also testified at the RCr 11.42 hearing. He stated that he had been a practicing attorney in Kentucky for almost 19 years with criminal defense work as a substantial part of his practice. Although this was his first capital case, he said he had handled other violent crimes. He had previously represented Foley and represented him in a quadruple homicide after this case was tried. He stated that Foley was reluctant to put his family through the rigors of testifying in mitigation. Trial counsel said that Foley assisted · him in the defense and that they worked very closely together. He did not remember anything that would make him think that Foley was incompetent during trial because his client was lucid and able to converse with counsel and others. Trial counsel said that he met with post-conviction counsel and was cooperative in regard to the RCr 11.42 motion.

■■■ The general standards which measure questions relative to the ineffective assistance of counsel are set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Gall v. Commonwealth*, Ky., 702 S.W.2d 37 (1985); *Sanborn v. Commonwealth*, Ky., 975 S.W.2d 905 (1998). In order to be ineffective, performance of counsel must be deficient and below the objective standard of reasonableness and prejudicial so as to deprive a defendant of a fair trial and a reasonable result. *Strickland, supra.* "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992). The critical issue is not whether counsel made errors but whether counsel was so thoroughly ineffective that defeat was snatched from the hands of probable victory. *Morrow, supra.* The purpose of RCr

11.42 is to provide a forum for known grievances, not to provide an opportunity to research for grievances. *Gilliam v. Commonwealth*, Ky., 652 S.W.2d 856, 858 (1983).

■■■ In considering an ineffective assistance of counsel claim, the reviewing court must consider the totality of evidence before the judge or jury and assess the overall performance of counsel throughout the case in order to determine whether the identified acts or omissions overcome the presumption that counsel rendered reasonable professional assistance. *See Morrow; Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

■■■ A defendant is not guaranteed errorless counsel, or counsel judged ineffective by hindsight, but counsel likely to render and rendering reasonably effective assistance. *McQueen v. Commonwealth*, Ky., 949 S.W.2d 70 (1997). *Strickland* notes that a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The right to effective assistance of counsel is recognized because of the effect it has on the ability of the accused to receive a fair trial. In a death penalty case where the aggravating factors are overwhelming, it is particularly difficult to show prejudice at sentencing due to the alleged failure to present mitigating evidence. *Bonin v. Calderon*, 59 F.3d 815 at 836 (9th Cir.1995).

■■■ In a RCr 11.42 proceeding, the movant has the burden to establish convincingly that he was deprived of some substantial right which would justify the extraordinary relief afforded by the post-conviction proceeding. *Dorton v. Commonwealth*, Ky., 433 S.W.2d 117, 118 (1968).

■■■ The information that the witnesses at the RCr 11.42 hearing may have testified to during the penalty phase of the original trial would have been offset by their testimony regarding the propensity

of Foley for violence. The performance of trial counsel was not ineffective because he failed to present testimony of these witnesses in the penalty phase of the original trial.

■■■ Trial counsel became familiar with members of the Foley family during the course of this representation and discussed the trial strategy with the defendant. There was no testimony that Foley told the trial attorney that there were witnesses that had critical mitigating evidence. As a result of the discussions with Foley and trial strategy, the trial counsel decided not to call mitigation witnesses. There is no evidence to substantiate the claim that Foley may not have understood mitigation. It is clear that trial counsel understood what issues could be raised in the penalty phase. "Decisions relating to witness selection are normally left to counsel's judgment and this judgment will not be second-guessed by hindsight." *Fretwell v. Norris,* 133 F.3d 621, 627 (8th Cir.1998).

■■■ Although we certainly recognize the necessity for complete investigation by defense counsel, we must conclude that a reasonable investigation is not an investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources, but also with the benefit of hindsight would conduct. *Thomas v. Gilmore,* 144 F.3d 513 (7th Cir.1998). It is only reasonable for any lawyer to place certain reliance on his client. The investigation must be reasonable under all the circumstances. *Stevens v. Zant,* 968 F.2d 1076 (11th Cir.1992). In this case, there was no proof of any reason for trial counsel to investigate Foley's background more thoroughly. There was no evidence of any mental defect. Trial counsel knew Foley and his family from previous representations, and their testimony at the RCr 11.42 hearing indicated a violent nature. The decision of counsel not to conduct additional investigation into a defendant's background in search of mitigating circumstances can be supported by reasonable professional judgment. *Cf. Fretwell, supra.* Even if he had documented additional mitigating evidence, trial counsel could have decided that the negative testimony that would be elicited might only serve to inflame the jury and therefore decline to present it. As in *Fisher v. Angelone,* 163 F.3d 835 (4th Cir. 1998), it cannot be said that a strategic decision not to call mitigating witnesses was unreasonable. *See also Preston v. Delo,* 100 F.3d 596, 603 (8th Cir.1996).

In this case, there is no reasonable probability that the omitted testimony would have changed the result reached by the jury or the sentencing fixed by it. Foley was not prejudiced by the alleged failure of trial counsel to investigate and present mitigating evidence. There is no showing of either deficient performance or substantial prejudice which are required to present an ineffectiveness of counsel argument.

## II. Competency and Mental Health

■■■ It is axiomatic that federal and state law prevent the trial of an incompetent defendant. KRS 504.090; RCr 8.06. If there are reasonable grounds to believe that a defendant is not competent to stand trial, the proceeding must be discontinued and the trial judge must appoint a psychologist or psychiatrist to examine the defendant, file a report and then a hearing must be held. KRS 504.100. Here, at the RCr 11.42 hearing, trial counsel testified that Foley assisted him in his defense and that they worked very closely. The attorney further testified that he did not remember anything that made him think Foley was incompetent during trial and that Foley seemed lucid and was able to converse with him and others. Foley testified in his own defense for over one and one-half hours. The trial judge had the opportunity to observe that Foley was able to communicate effectively his version of the offense and was able to answer questions both on direct and cross-examination.

Foley did not testify at his RCr 11.42 hearing. No medical proof of any mental history was offered to support the claim of

incompetency. The only evidence introduced indicating any bizarre behavior were letters supposedly written by Foley to his deceased grandmother shortly before trial. Although family members spoke of various head injuries suffered by Foley during childhood, no medical records were presented to support such testimony. Trial counsel testified at the RCr 11.42 hearing that he saw no signs of mental illness and that he had no problem communicating with Foley before and during the trial, and that Foley maintained his own trial folder and discussed it intelligently with counsel. There was no evidence that Foley was incompetent. The authorities cited by Foley are unpersuasive. Trial counsel was not ineffective for declining to request a competency hearing.

### III. Effective Assistance of Counsel

A review and analysis of the argument presented by Foley that he was denied effective assistance of counsel because the circuit court improperly denied an evidentiary hearing on certain issues is without merit.

The RCr 11.42 motion contained twenty-six grounds and the circuit court disposed of issues 1 through 17, 19, 20, 22 and 26, determining that a hearing was not required. An evidentiary hearing was held on the remaining issues on November 10, 1997. As has been previously noted, the standard for reviewing ineffective assistance of counsel claims has been discussed and Foley was not denied effective assistance. Here, the record clearly refutes the allegations contained in the RCr 11.42 motion. He was not entitled to an evidentiary hearing on all of the allegations. He received a full and fair litigation of his alleged grounds for relief pursuant to *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

■■■ We have reviewed the other issues and find them to be without merit. In the guilt phase, the change of venue issue was raised on direct appeal and cannot be relitigated in this proceeding. *Wil-son v. Commonwealth,* Ky., 975 S.W.2d 901, 903 (1998). The ballistic expert used by the defense was allowed to testify and was extensively cross-examined at trial. The trial court was correct in finding that there was no ineffective assistance of counsel in this respect. The question of rebuttal evidence was rejected on direct appeal as were the issues regarding the impeachment of Foley, victim evidence and the fact the victim's father testified while in a wheelchair.

■■■ In regard to the impeachment of witnesses for the Commonwealth, Marge Foley was extensively cross-examined by defense counsel. The jury had sufficient evidence to make an informed judgment about the credibility of such witnesses. There was no evidence that the witness, Watt, was a suspect in the other case involving Foley and her testimony was consistent with that of Foley. Defense counsel cross-examined the witness and pointed out inconsistencies in regard to her prior deposition.

■■■ Defense counsel was not ineffective for failing to object to a prior felony conviction from 1977. The indictment gave sufficient notice of aggravators pursuant to *Perdue v. Commonwealth,* Ky., 916 S.W.2d 148 (1995), and instruction issues were rejected in the direct appeal.

### IV. Funds for Experts

Foley argues that the trial court improperly denied him funding for a ballistics expert and a social worker because he needed these two experts for the evidentiary hearing to prove the prejudice in his original jury verdict.

■■■ Foley has no constitutional right to expert assistance in a collateral attack proceeding. *Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989). The requirement to provide funds to indigent defendants for necessary experts as stated in *Binion v. Commonwealth,* Ky., 891 S.W.2d 383 (1995) and

*Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), has not been extended to post-conviction matters. The standard for determining whether a criminal defendant is entitled to funds for expert assistance is whether such assistance is reasonably necessary. *Hicks v. Commonwealth,* Ky., 670 S.W.2d 837 (1984). Such a decision is within the sound discretion of the trial judge, and the same standard is to be applied in RCr 11.42 proceedings. *McQueen, supra.*

 Foley contends that a ballistics expert was necessary to prove that he did not kill Harry Vaughn and only shot at Rodney Vaughn in self-defense. He does not have an affidavit from any ballistics expert stating this proposition. There is no showing that the one expert he contacted could change the Foley verdict. He also claims that he needs a social worker to explain his background and character to the jury. Again, he does not indicate what a social worker would testify to or how this testimony would change the reliability of the verdict. Foley does not demonstrate that either of these proposed expert witnesses was reasonably necessary pursuant to *Hicks, supra.* It was not error for the trial judge to deny motions for funds for experts because those experts were not reasonably necessary.

## V. Credibility of Witness

 Foley claims that newly discovered evidence would show that a prosecution witness lied and that thus his conviction and sentence should be reversed. His new evidence is based on affidavits from another death-row inmate and a convicted felon who both alleged they were in jail with the prosecution witness who confessed to them that he actually shot Lynn Vaughn. The evidence is not new because it only corroborates the trial testimony.

 The granting of a new trial is disfavored when the grounds are newly discovered evidence which is merely cumulative or impeaching in nature. *See Collins v. Commonwealth,* Ky., 951 S.W.2d 569, 576 (1997). At the RCr 11.42 hearing, a witness testified that Dugger confessed to him also. The witness admitted that he had five felony convictions and that four of them had been prosecuted by the current prosecutor of Foley. Newly discovered evidence is not a basis for RCr 11.42 relief. *McQueen.* There is nothing to suggest that in the absence of this allegedly newly discovered material, the verdict would have been any different. The trial judge did not abuse his discretion in finding that the testimony submitted by affidavits from prison inmates was not credible. *See Epperson v. Commonwealth,* Ky., 809 S.W.2d 835 (1991).

## VI. Rush to Judgment

 Foley contends that his RCr 11.42 attorneys needed additional time to prepare and present issues. In this case, Foley had sufficient time to prepare issues for the RCr 11.42 motion. His conviction was affirmed in 1996 and certiorari was denied by the U.S. Supreme Court. Foley did start preparing for his RCr 11.42 hearing by faxing a 15–page motion to the circuit court just three days after certiorari was denied. The motion had attached to it the affidavits of two potential RCr 11.42 witnesses which were signed on September 26, 1996 and November 22, 1996, approximately one year before the evidentiary hearing would eventually be scheduled. Foley and his lawyers were well aware of what was coming and had the commendable foresight to begin preparations even before the direct appeal was affirmed.

As previously stated, the purpose of a RCr 11.42 proceeding is to provide a forum for known grievances, not to provide an opportunity to research for grievances. *Gilliam, supra.* There was no valid reason for the circuit court to grant additional preparation time.

RCr 9.04 provides a standard for postponing a trial or evidentiary hearing. It requires the defendant to demonstrate

what witnesses or evidence counsel has been unable to obtain in time for the hearing, the materiality and that due diligence has been exercised to obtain it. Foley did not comply with the requirements of this rule.

Foley was unable to identify with any particularity, any witnesses or evidence of claims that they would have been able to present had they been granted a continuance of the RCr 11.42 hearing. Foley mentions three missing witnesses but of those he only gives the name of one, Ronnie Dugger. He provides no affidavits to indicate what he believes Dugger's testimony would be. He merely claims that Dugger lied during trial, and yet he presented the testimony of two witnesses at the RCr 11.42 hearing that Dugger had lied. He claims in a vague general way that he learned of useful information that could have been presented by other witnesses, but no mention of these individuals is made and what they would have specifically testified about.

In addition, there is no indication as to what a ballistics expert and a social worker would have testified or why their testimony was material. Again, no affidavits of any nature were filed. Thus, there was no need to grant a continuance based on either of these suggested sources of testimony. Neither of these witnesses would have been reasonably necessary and the trial court was correct in not granting funds. Foley's complaint about discovery issues is without merit because pretrial discovery rules do not apply in RCr 11.42 proceedings. *Sanborn v. Commonwealth*, Ky., 975 S.W.2d 905 (1998).

In regard to the missing evidence of medical records, there is no showing as to what those records would say or if he was ever taken to a doctor and if there were any medical records in existence. He did not comply with RCr 9.04 and was not entitled to a postponement of the hearing.

Foley contends that an RCr 11.42 proceeding requires a "virtual reinvestiga-tion." We disagree. This proceeding is not a retrial. He had ample time in which to prepare for the hearing and there is no legitimate RCr 11.42 claim which would justify the extraordinary relief available in an RCr 11.42 proceeding. There was no abuse of discretion or error of any kind in not granting a continuance.

## VII. Prosecutorial Misconduct

Foley complains that he was denied due process of law, a fair trial and a reliable sentence because the prosecutor withheld favorable evidence, coached witnesses and tossed a gun into the jury box. All aspects of this issue were raised in his motion for a new trial as well as the RCr 11.42 motion.

Our review of the record does not indicate that the prosecutor withheld evidence. This issue has already been addressed on direct appeal and was raised by Foley in a motion for a new trial that was rejected by the trial judge. We find no reason to relitigate this subject. *See Foley v. Commonwealth*, 942 S.W.2d at 886. Foley claims that the prosecutor withheld evidence that Ronnie Dugger was not intimidated because the prosecutor knew that Dugger called his mother and said he was okay. In order to support a motion for a new trial, any newly discovered evidence must be of such a decisive nature that it would, with reasonable certainty, change the verdict. *Collins v. Commonwealth*, Ky., 951 S.W.2d 569, 576 (1997); *Coots v. Commonwealth*, Ky., 418 S.W.2d 752, 754 (1967). The granting of a new trial is not favored when the grounds are newly discovered evidence which is merely cumulative or impeaching in nature.

Reliance by Foley on *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is misplaced. Those federal cases held that a new trial is not automatically required whenever a combing of the prosecutor's files after trial has disclosed evidence possibly useful to the

defense, but not likely to have changed the verdict. Next, Foley asserts that the prosecutor met with prosecution witnesses prior to trial, provided them with portions of the discovery and instructed them on their testimony. This ground was also included in his motion for a new trial. We agree with the trial judge that this claim has been waived because post-conviction counsel has not introduced any evidence to substantiate this allegation at the evidentiary hearing. There was no abuse of discretion in refusing a request for reconsideration or for a supplemental hearing because of an alleged automobile accident involving the witness. Finally, the suggestion that the prosecutor threw a gun in the court room is without merit and has been refuted by an examination of the video tape of the trial. There was no basis for avowal testimony from the person who has testified that he was a personal friend of Foley and would do anything to help him. There was no credible evidence to support this claim and it was refuted by the video tape of the trial. The trial judge properly overruled the issue before the RCr 11.42 hearing and avowal testimony was not proper at the hearing. *Cf. McQueen.*

## VIII. Juror Misconduct

■■■ Foley argues there was misconduct on the part of three jurors during his original trial. To support these allegations he presented evidence from four witnesses, his trial attorney, one of the jurors and two other persons. All three of the jurors unequivocally denied making the statements attributed to them by Foley.

The trial attorney testified that he was aware of a claim that a juror had told others at a restaurant that the jury had already decided guilt. The trial lawyer sent an associate to the restaurant to investigate the claim but the associate was not able to verify the allegation.

The witnesses called by Foley to support his contention could not name a single individual who supposedly heard such statements or passed information on to

them. Foley offered no proof as to the assertions regarding the kinship of jurors to an assistant Commonwealth Attorney and the Commonwealth offered proof that there was no such kinship. The assistant Commonwealth Attorney did not participate in the trial. The claims of juror misconduct are based on suspicion, rumor and speculation. There is no credible evidence to support such allegations. The authorities cited by Foley are unconvincing and without merit.

## IX. Discovery Denial

■■■ Foley contends that he was denied discovery during the RCr 11.42 post-conviction proceedings. He asserts that the proceedings must have the same scope as a pretrial investigation. We disagree. The RCr 11.42 proceeding is limited in purpose and scope. This Court has stated that such proceedings are not the equivalent of a retrial. *Dorton v. Commonwealth,* Ky., 433 S.W.2d 117 (1968). *Sanborn, supra,* has indicated that pretrial rules of discovery do not apply in RCr 11.42 proceedings.

■■■ Foley has already received complete discovery and has been convicted. He is no longer simply an accused. He is not permitted to fish through official records in hopes that something may turn up to his benefit. *See Gilliam, supra.*

## X. Letter from Wife

■■■ An examination of the record does not indicate any testimony that the trial attorney was made aware of an alleged letter from Foley's wife to the defendant prior to trial. The letter indicated that she became pregnant by a state police officer and that another police officer had given her money. Obviously, defense counsel did not cross-examine her about the letter or about her relationships with either of the two police officers. Foley does not state when he received the letter, nor does he indicate when trial counsel became aware of the letter during trial.

Foley, who testified in his own defense, made no mention of the facts that he now argues. Trial counsel cross-examined Foley's wife concerning pending criminal charges against her and the fact that she had unresolved custody litigation. At trial, Foley testified that his wife was "a dope-head and a whore."

The trial judge correctly found that Foley did not assert that he made trial counsel aware of the purported letter or that he asked trial counsel to question his wife about the alleged letter. Foley did not testify at the RCr 11.42 hearing.

 In attempting to obtain post-conviction relief, the movant must present facts with sufficient particularity to generate a basis for relief. RCr 11.42(2); *Skaggs v. Commonwealth*, Ky., 803 S.W.2d 573 (1990); *Lucas v. Commonwealth*, Ky., 465 S.W.2d 267 (1971).

XI. Denial of Mitigating Evidence

Foley complains that he was not allowed to present relevant mitigating evidence during the testimony of four witnesses at the RCr 11.42 hearing. Foley argues that the evidence was highly relevant to the issue of his character both as a child in school and as a grown adult. All of the evidence he wanted to present was placed in the record by avowal. An examination of it indicates that it is clearly unreliable, inadmissible hearsay. KRE 802. None of the information would have been admissible at trial even through the hearsay exception route. KRE 803 and 804. Thus, it was not ineffective assistance of counsel for the defense lawyer not to have produced it at trial.

The hearsay testimony offered here meets none of the criteria of reliability noted by the United States Supreme Court in *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979). In any event all the testimony was recorded by avowal and we conclude that the trial court did not commit any error in excluding it.

We conclude that Foley did not receive ineffective assistance of counsel pursuant to RCr 11.42. He has not demonstrated a professional performance that was so deficient that it prejudiced the defense. There is no showing that the alleged errors of defense counsel were so serious that the result of the trial was unreliable. *See Strickland; Gall; McQueen; Sanborn.*

The decision of the circuit court is affirmed in all respects.

All concur.