# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: OCTOBER 29, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0182-MR

ROBERT FOLEY                                                              APPELLANT

V.              APPEAL FROM LAUREL CIRCUIT COURT
HONORABLE MICHAEL O. CAPERTON, JUDGE
NO. 91-CR-00180

COMMONWEALTH OF KENTUCKY                                                  APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant, Robert Foley ("Foley"), is no stranger to this Court. In the twenty-seven years since he was sentenced to death for the murders of Rodney and Lynn Vaughn, Foley has mounted numerous assaults on his conviction. This appeal stems from a recent neuropsychological evaluation Foley received. In light of a clinical psychologist's expert opinion that he suffers from certain cognitive impairments, Foley seeks to vacate his death sentences. Now, we must decide whether the trial court erred in denying Foley's motion to vacate or set aside his sentences. Based on our review of the record and applicable law, we hold that the trial court did not err and affirm its Order.

# I. FACTUAL BACKGROUND[1]

This case arises out of the shooting deaths of Rodney and Lynn Vaughn in August 1991. Foley shot and killed both brothers during a party at his Laurel County residence. At trial, the Commonwealth presented eyewitness testimony and circumstantial evidence identifying Foley as the killer and his attempts to conceal the crime. The jury accepted this evidence and found Foley guilty of two counts of murder. During the penalty phase of the trial, Foley's counsel did not introduce mitigating evidence. Based on the jury's recommendation, the trial court sentenced Foley to death for both murders.

This Court affirmed Foley's convictions and sentences on direct appeal.[2] Foley then sought post-conviction relief pursuant to RCr[3] 11.42, alleging, as is relevant here, that trial counsel was ineffective due to his failure to adequately investigate and to present mitigating evidence during the penalty phase of his trial. Foley's state post-conviction counsel did not include a claim that trial counsel's ineffectiveness consisted in part of a failure to seek appointment of a neuropsychological expert.[4] The circuit court denied post-conviction relief and this Court affirmed.[5] In the intervening years, Foley unsuccessfully sought

---

[1] In light of the extensive procedural history of this case and the narrowness of the issue at hand, we set out only an abbreviated recitation of the facts. For a more comprehensive account, *see Foley v. Commonwealth*, 425 S.W.3d 880 (Ky. 2014); *Foley v. Commonwealth*, 17 S.W.3d 878 (Ky. 2000); *Foley v. Commonwealth*, 942 S.W.2d 876 (Ky. 1997).

[2] *Foley*, 942 S.W.2d at 890.

[3] Kentucky Rule of Criminal Procedure

[4] Foley's state post-conviction counsel did seek funding for a ballistics expert and a clinical social worker for assistance in the RCr 11.42 hearing. *See Foley*, 17 S.W.3d at 887.

[5] *Foley*, 17 S.W.3d

2

federal habeas corpus relief[6] and unsuccessfully pursued numerous CR[7] 60.02 motions.[8]

In 2018, Foley received funding to hire a neuropsychologist in connection with a separate federal habeas case.[9] Dr. Daniel Martell (Dr. Martell), a clinical psychologist, evaluated Foley for over fifteen hours across two days. The examination consisted of a review of prior case materials, an investigation into Foley's personal and medical history, and the evaluation of Foley's performance on numerous neuropsychological tests. Based on his examination, Dr. Martell opined that Foley demonstrated a decline in cognitive abilities consistent with a history of prior head injuries and "appeared to suffer from progressive chronic traumatic encephalopathy (CTE)."[10] Additionally, Dr. Martell opined that Foley exhibited "multiple areas of impairment in frontal lobe executive functioning."

Foley moved the Laurel Circuit Court to vacate his sentences due to this report. Foley alleged that the report was "newly discovered evidence" sufficient to grant relief under either CR 60.02, CR 60.03, RCr 10.02; and RCr 11.42(10).

---

[6] *Foley v. Parker*, 488 F.3d 377 (Cir. 2007).

[7] Kentucky Rule of Civil Procedure.

[8] *Foley v. Commonwealth*, 425 S.W.3d 880 (Ky. 2014); *Foley v. Commonwealth*, No. 2008–SC–000909–TG, 2010 WL 1005873 (Ky. March 18, 2010); *Foley v. Commonwealth*, No. 2007-SC-000754-MR, 2009 WL 1110333 (Ky. Apr. 23, 2009); *Foley v. Commonwealth*, No. 2002-SC-0222-TG, 2003 WL 21993756 (Ky. Aug. 21, 2003).

[9] Foley is currently serving four additional death sentences related to four murder charges arising out of a separate incident. *See Foley v. Commonwealth*, 952 S.W.2d 924 (Ky. 1997).

[10] Foley Brief on Appeal, Ex. 2 at 58.

The circuit court denied the motion, finding it to be "procedurally improper, time-barred, or otherwise defective." Foley now appeals as a matter of right.[11]

## II. ANALYSIS[12]

Foley seeks relief under three different procedural rules, but each shares a basic premise: Dr. Martell's expert opinion and report constitute newly discovered evidence of such import that a reasonable juror, had he or she known of it, would not have voted to impose the death penalty. The circuit court's Order purportedly declines to reach the merits. Instead, the court dismissed each challenge on procedural grounds. The gist of the court's reasoning was that the report is not new evidence. Instead, that circuit court found that the report rearticulates similar claims of head injuries that Foley has raised for years. We consider these general arguments in context of the specific procedural vehicles Foley raised.

## A. CR 60.02

First, Foley seeks relief from his sentences under CR 60.02. On appeal, we review the denial of a CR 60.02 motion for abuse of discretion.[13] The test for abuse of discretion is whether the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[14] We will

---

[11] KY. CONST. § 110(2)(b); *Skaggs v. Commonwealth,* 803 S.W.2d 573, 577 (Ky. 1990) (Court of Appeals has no authority to review any matter affecting the imposition of death sentence).

[12] Each of these issues is preserved via Foley's omnibus motion to vacate. *See* Foley Brief, Ex. 3 at 20-36.

[13] *Brown v. Commonwealth*, 932 S.W.2d 359, 361 (Ky. 1996).

[14] *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

affirm the lower court's decision unless doing so would be a "flagrant miscarriage of justice."[15]

In addition to the causes enumerated in subsections (a)-(e), CR 60.02(f) provides that a court may relieve a party from its final judgment for "any other reason of an extraordinary nature justifying relief." Ordinarily, the rule requires claims grounded on the discovery of new evidence to be brought within one year.[16] Our case law recognizes, however, that evidence discovered outside of the one-year time limit may support a claim under 60.02(f) in certain limited circumstances. [17] "In order for newly discovered evidence to support a motion for new trial it must be of such decisive value or force that it would, with reasonable certainty, have changed the verdict or that it would probably change the result if a new trial should be granted."[18]

A movant must bring an action under CR 60.02(f) "within a reasonable time" of the entry of judgment. This determination is inherently fact-specific and, as such, is best placed in the trial court's discretion.[19] While the distance between final judgment and the motion is a relevant factor, a reviewing court should consider the basis for the movant's claim, when the information

---

[15] *Gross v. Commonwealth,* 648 S.W.2d 853, 858 (Ky. 1983).

[16] See CR 60.02(b).

[17] *See Foley,* 425 S.W.3d at 886.

[18] *Jennings v. Commonwealth,* 380 S.W.2d 729, 730 (Ky. 1963)(internal quotations omitted).

[19] *See Gross,* 648 S.W.2d at 858.

supporting such claim was discovered by the movant, and the reason behind the delay in discovering the information and the filing of the motion.[20]

Further, Kentucky law expresses a strong aversion to successive post-judgment motions.[21] In the context of CR 60.02, a defendant must only raise those claims which she could not have raised either on direct appeal, in a RCr 11.42 action, or in another CR 60.02 motion.[22] Evidence discovered after the conclusion of *all prior proceedings*, in a limited set of circumstances, may provide an adequate basis for a subsequent CR 60.02 motion.

The trial court found that Foley's motion was untimely and successive because the facts underlying Dr. Martell's opinion—Foley's history of head injuries—were known to Foley at the time of trial and could have been raised in a prior proceeding. Effectively, the trial court found that Dr. Martell's report was not "newly-discovered." In doing so, the trial court relied on our previous opinion in this litigation concerning a similar CR 60.02 motion.[23] In that previous decision, this Court held that an expert opinion "cannot fit the definition of newly-discovered evidence unless it is based on facts that were not

---

[20] *See e.g.*, *Bedingfield v. Commonwealth*, 260 S.W.3d 805 (Ky. 2008)(holding that a CR 60.02 motion filed eight years after trial was timely when new DNA testing methods gave rise to exculpatory evidence). By contrast, when the information supporting a CR 60.02(f) motion was known to the defendant at trial or within one year of final judgment, the reviewing court will find the motion to be time-barred. *See Foley*, 425 S.W.3d at 884-886); *see also, Stoker v. Commonwealth*, 289 S.W.3d 592, 594-95 (Ky. App. 2009)(holding that trial court did not abuse its discretion when it found that motion premised on facts known to defendant for ten years was untimely).

[21] *See e.g. McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997); *Gross*, 648 S.W.2d at 853-56.

[22] *McQueen*, 948 S.W.2d at 416.

[23] *Foley*, 425 S.W.3d at 887.

previously known and could not with reasonable diligence have been discovered."[24]  There, we rejected on the merits a CR 60.02 motion premised on a ballistic report that reexamined and reinterpreted previously known facts.[25]

Here, the trial court reasoned that Dr. Martell's report was similar in kind to the ballistics report.  The trial court found that Martell's opinion was "derived from facts known to the [Foley] for his literally his entire life."[26]  Moreover, the issue of Foley's history of head injuries was previously raised in his initial RCr 11.42 hearing, albeit without any medical reports supporting his claims.[27]  In sum, the trial court concluded that this was not newly discovered evidence of sufficient gravity to justify reopening Foley's case.

Foley urges us to reject the comparison to the ballistics report.  Instead, he argues that this Court's decision in *Bedingfield* supplies the more appropriate analogy.  There, this Court held that the presence of physical evidence, discovered through DNA-testing methods not available at the time of trial, that implicated another person for the commission of the crime in question was grounds for a new trial.[28]  Foley claims that Dr. Martell's conclusions regarding his cognitive impairments arise out of newly-performed psychological tests rather than a reexamination of Foley's prior medical history.  Under Foley's theory, Dr. Martell's report supplies a basis for his conclusion

---

[24] *Id.*

[25] *Id.*

[26] Foley Brief, Ex.1 at 102.

[27] *See Foley*, 17 S.W.3d 878 (Ky. 2000).

[28] *See Bedingfield*, 260 S.W.3d at 815.

independent of facts previously in the record, thereby distinguishing it from the ballistics report.

While acknowledging that it is a somewhat close call, we do not determine that the trial court abused its discretion. While Dr. Martell performed an independent evaluation of Foley's cognitive abilities as they stood in 2018, Dr. Martell's conclusions explicitly take into account Foley's history of head injuries. In his report, Dr. Martell opines that Foley's decline in cognitive abilities was "consistent with his history of multiple head injuries" and was consistent with "progressive CTE."[29] While Foley never underwent psychological testing before 2018, he first raised the issue of his head injuries over 20 years ago in his initial state postconviction proceeding. So, while he now possesses a new report claiming that he currently exhibits signs of neuropsychological decline, it is not as if the possibility that Foley may suffer from effects of head trauma could not have been raised in a previous proceeding. In fact, it was raised. Therefore, *on the facts of this case*, we hold that the trial court did not abuse its discretion in finding that Foley's CR 60.02 motion was procedurally barred.

### B. **RCr 10.02 and 10.06**

Foley advances a similar argument under RCr 10.02 and 10.06. RCr 10.02 permits a court to "grant a new trial for any cause which prevented the defendant from having a fair trial, or if required in the interest of justice." Ordinarily, a motion for a new trial on the basis of newly discovered evidence

---

[29] Foley Brief, Ex. 2 at 58.

may only be brought later than one year after the entry of judgment "if the court for good cause so permits." While the standards are not identical, "[a]n extraordinary circumstance under CR 60.02(f) always establishes good cause under RCr 10.06(1)."[30] So each inquiry takes into consideration similar factors, given differing weights. In this case, we do not find that distinction controlling. Just as we determine that Dr. Martell's report does not constitute an extraordinary circumstance under CR 60.02, we similarly conclude that it does not constitute good cause pursuant to 10.06.

## C. RCr 11.42

Foley's claim under RCr 11.42 (10) takes three alternative forms. To the extent that Foley advances the same argument for relief under RCr 11.42 as he maintains under CR 60.02, we find the motion to be procedurally improper. Such a theory impermissibly elides the standard for relief under CR 60.02 and RCr 11:42. Kentucky law is very clear the standards for relief under CR 60.02 and RCr 11.42 are distinct; one cannot simply repackage their 60.02 argument in an 11.42 motion or vice versa.[31]

To the extent that Foley attempts to relitigate the effectiveness of counsel in his initial post-conviction proceedings, his claims are procedurally barred. He brings his current challenge under RCr 11.42(10), which imposes a three-year period from final judgment during which a movant must bring their

---

[30] *Bedingfield*, 260 S.W.3d at 811.

[31] *See Gross*, 648 S.W.2d at 856 ("The structure provided in Kentucky for attacking the final judgment of a trial court in a criminal case is not haphazard and overlapping but is organized and complete.")

claim.[32]  While the rule provides an exception for claims predicated on newly

discovered evidence, Foley already pursued a RCr 11.42 claim against trial

counsel.  And RCr 11.42(3) provides that the motion to vacate "shall state all

grounds for holding the sentence invalid of which the movant has knowledge."

Given that Foley's prior history of head injuries was both known to him at that

time and actually litigated in his state postconviction hearing, he cannot now

raise that issue against trial counsel under the plain language of RCr 11.42(3).

But Foley anticipated our conclusion and offers a third way to consider

his 11.42(10) claim.  He argues that if we find that he is procedurally barred

under 11.42(3) from asserting an ineffectiveness-of-trial-counsel claim, then

that procedural bar should be excused due to the ineffectiveness of his state

post-conviction proceedings counsel.  While this theory is not currently

recognized under Kentucky law, Foley asks us to extend the holdings of

*Martinez v. Ryan*[33] and *Trevino v. Thaler*[34] to claims arising out of Kentucky

post-conviction proceedings.  Specifically, he contends that this Court's holding

in *Bowling v. Commonwealth* implicitly compels this result.[35]  This argument

requires unpacking.

Under the doctrine of procedural default, a federal habeas court will not

review the merits of claims that a state court declined to hear due to the failure

---

[32] *See* RCr 11.42(10).

[33] 566 U.S. 1 (2012).

[34] 569 U.S. 413 (2013).

[35] 163 S.W.3d 361 (Ky. 2005).

of a prisoner to comply with a state procedural rule.[36] The theory behind this doctrine is that principles of federalism require federal courts to respect the finality of state court judgments.[37] However, this general rule has an exception. Federal courts may invoke their equitable powers to excuse a procedural default and hear the merits of a case if a prisoner can show cause for the default and prejudice resulting from a violation of federal law.[38]

This Court has, on at least one occasion, looked to federal case law in this area for support in fashioning equitable relief. In *Bowling*, this Court utilized the federal cause-and-prejudice standard to decide if a prisoner's waiver of a constitutional claim should be excused.[39] Specifically, the Court considered whether the "miscarriage of justice" exception, which allows a prisoner to maintain a merits-based challenge to a defaulted claim even if she fails to show cause for the default, permitted them to consider the merits of the prisoner's claim.[40] While this Court did not engage in an exhaustive analysis on the applicability of that exception in state court proceedings, we did use the federal analytical framework to guide the use of our own equitable discretion.

---

[36] *Martinez*, 566 U.S. at 9 (citations omitted).

[37] *See Davila v. Davis*, 137 S. Ct 2058, 2064 (2017).

[38] *See Martinez*, 566 U.S. at 10 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

[39] 163 S.W.3d at 372-373.

[40] *Id.* The "miscarriage of justice" exception allows a court to review the merits of a procedurally defaulted claim even if the prisoner cannot show cause for the default "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (citing *Coleman, supra,* at 749-50).

For years, "[n]egligence on the part of a prisoner's postconviction attorney [did] not qualify as cause."[41]  *Martinez* expanded this exception, holding that in states where an ineffective-assistance-of trial-counsel claim must first be brought in a collateral proceedings, the lack of state post-conviction counsel or the ineffectiveness of state post-conviction counsel, under the standard of *Strickland v. Washington*[42], may serve as "cause" to excuse a procedural default.[43]  The following year, the United States Supreme Court further extended the exception to cover states, which, as a matter of procedural design, deny a meaningful opportunity for prisoners to raise ineffective-assistance-of-trial-counsel claims outside of collateral proceedings.[44]

With that background in mind, we now address Foley's claim.  Foley argues that the *Martinez/Trevino* rule applies to our review of RCr 11.42 proceedings because we have already recognized the cause-and-prejudice exception in *Bowling*.  Since we have adopted this exception before *Martinez* and *Trevino*, Foley contends that the subsequent expansion of the exception brought about by those decisions holds sway over Kentucky courts.  This is an interesting question that deserves consideration in the appropriate case.  But *this* case is not *that* case.

---

[41] *Id.* (citing *Maples v. Thomas,* 565 U.S. 266, 280 (2012)).

[42] 466 U.S. 668 (1984).

[43] *Martinez,* 566 U.S. at 13-14.

[44] *See Trevino v. Thaler*, 569 U.S. 413 (2013).  The Sixth Circuit held that Kentucky's state postconviction regime fall under the scope of *Trevino. Woolbright v. Crews*, 791 F.3d 628 (2015).

Let's assume that *Martinez* and *Trevino* apply. Under those cases, Foley may establish "cause" to excuse a procedural default where: (1) his claim of ineffectiveness-of-trial-counsel is "substantial" **and** (2) the cause consisted either of the lack of state-postconviction-proceeding counsel or the ineffectiveness of state-postconviction-proceeding counsel.[45] Thus, the ineffectiveness of state-postconviction-proceedings counsel is a necessary condition for relief under *Martinez* and *Trevino*.[46] Here, we are not convinced that Foley can demonstrate that his counsel performed below constitutional standards in the RCr 11.42 proceedings.

We have described *Strickland* as containing two prongs, both of which must be met to sustain a claim of ineffective assistance of counsel: the "performance" and "prejudice" prongs.[47] To meet the "performance" prong, a movant must show that "counsel's representation fell below an objective standard of reasonableness."[48] To meet the "prejudice" prong, a movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[49]

Here, Foley claims that his counsel in his RCr 11.42 proceedings rendered ineffective representation due to their failure to adequately develop a claim that trial counsel was ineffective in failing to present mitigating evidence

---

[45] *See Trevino*, 569 U.S. at 423.

[46] *See Martinez* at 16. ("When faced with the question whether there is cause for an apparent default, a State may answer…that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.").

[47] *See Gall v. Commonwealth,* 702 S.W.2d 37, 39-40 (Ky. 1985).

[48] *Strickland*, 466 U.S. at 687–88.

[49] *Id.* at 694.

concerning Foley's head injuries and their effect on his neuropsychological well-being. Under the performance prong, this challenge poses two questions. First, whether, under an objective standard of reasonableness, Foley's post-conviction counsel should have raised a claim that trial counsel was ineffective for their failure to pursue neuropsychological testing in preparation for trial. And second, whether Foley's post-conviction counsel should have sought funds for a neuropsychological expert for use at the RCr 11.42 hearing.

As to the latter question, we cannot find that Foley's post-conviction counsel erred in failing to request funds for psychological testing. We observe that a claimant did not have a constitutional right to expert assistance in a collateral attack proceeding at the time of Foley's RCr 11.42 hearing.[50] Nor do they today. Importantly there is a "strong presumption" that an attorney's decision to pursue some claims and decline to pursue others is a tactical choice.[51] And "[r]are are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach."[52]

Foley's counsel requested funding for both a ballistics expert and a clinical social worker and was denied on both counts. The decision to pursue funding for experts to help develop what appears at the time to be stronger

---

[50] *See Foley,* 17 S.W.3d at 886-87.

[51] *Yarborough v. Gentry,* 540 U.S. 1, 6 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect.").

[52] *Harrington v. Richter,* 562 U.S. 86, 106 (2011)(citations omitted)(internal quotations omitted).

14

claims is a reasonable tactical decision. At the time of the RCr 11.42 proceeding, numerous witnesses were available to recount tales of Foley's brutal upbringing.[53] Additionally, there was a factual dispute about the nature of the firefight. Compared to general allegations of previous head injuries, numerous as they were, we cannot say that counsel's choice to lend support to what he or she determined to be stronger mitigating evidence was constitutionally deficient performance.

Similarly, we cannot conclude that post-conviction counsel was ineffective in failing to bring a claim of ineffective-assistance-of-trial-counsel related to the failure to seek funding for a neuropsychological expert. Foley's post-conviction counsel did raise claims based on trial counsel's failure to adequately investigate and present mitigating evidence.[54] As it relates to evidence of head injuries, counsel challenged trial counsel's failure to introduce the testimony of several family members who recalled head injuries suffered by Foley during his childhood. While this court rejected the mitigating force of that testimony due in part to the absence of medical records supporting trauma,[55] we do not find that post-conviction counsel rendered ineffective performance.

"Reliance on the harsh light of hindsight to cast doubt on [proceedings] that took place" nearly two decades ago runs contrary to the *Strickland*

---

[53] *See generally Foley*, 17 S.W.3d 878 (2000).

[54] *Id*. at 883.

[55] *Id*.

15

standard.[56]  We must evaluate counsel's conduct in context of the time in which he or she acted.[57]  In this case, post-conviction counsel raised over twenty-six grounds for ineffective-assistance-of-trial counsel, including the failure to introduce mitigating testimony regarding Foley's head injuries at trial. In light of these allegations, Foley's counsel sought expert assistance to develop the strength of the mitigation arguments concerning Foley's background.  From the perspective of post-conviction counsel, there were surely a number of claims and experts that he felt trial counsel might have pursued.  However, an attorney is entitled to filter activities that appear "distractive from more important duties."[58]  In this case, we cannot say that it was unreasonable to confine the ineffective-assistance-of-trial-counsel claim to the failure to present the testimony of family members as opposed to a psychological expert who may or may not have been provided.  While this calculus may change in light of contemporary understanding, that is not the inquiry.  Considering the record before us, Foley's state post-conviction counsel did not fail to meet the performance prong of *Strickland.*

In sum, we do not need to reach the question of whether *Martinez* and *Trevino* apply to Kentucky proceedings because, even if they did, Foley's post-conviction counsel provided constitutionally adequate assistance.  As a result,

---

[56] *See Harrington* 562 U.S. at 107.

[57] *Id.*

[58] *Id.* (citing *Bobby v. Van Hook,* 558 U.S. 4, 11, (2009)*(per curiam))*; *accord Haley v. Commonwealth*, 586 S.W.3d 744 (Ky. App. 2019), *review denied* (Oct. 24, 2019)

16

Foley is procedurally barred from raising a new ineffectiveness of trial counsel claim pursuant to RCr 11.42(3).

## IV. CONCLUSION

In light of the facts of this case and the applicable standard of review, we conclude that the trial court did not abuse its discretion in denying Foley's motion. As such, we affirm.

All sitting. All concur.

COUNSEL FOR APPELLANT:
David M. Barron
Assistant Public Advocate
Department of Public Advocacy

Michael J. O'Hara
O'Hara, Taylor, Sloan, & Cassidy

COUNSEL FOR APPELLEE:
Daniel Jay Cameron
Attorney General of Kentucky

Emily Bedelle Lucas
Assistant Attorney General