Judgment rendered June 28, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,135-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

RONALD L. BARBER                            Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 21CR5118

Honorable Larry D. Jefferson, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By:  G. Paul Marx

ROBERT S. TEW                               Counsel for Appellee
District Attorney

R. NICOLAS ANDERSON
Assistant District Attorney

* * * * *

Before PITMAN, ROBINSON, and ELLENDER, JJ.

**ROBINSON, J.**

The defendant, Ronald Barber ("Barber"), was arrested on October 3, 2021, following a domestic abuse battery complaint. On January 11, 2022, Barber was charged by bill of information with domestic abuse battery-fourth offense. On July 26, 2022, Barber pled guilty to an amended charge of domestic abuse battery-third offense under *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. E. 2d 162 (1970). Barber was sentenced to one year at hard labor without benefit of probation, parole, or suspension of sentence, and a $2,000 fine. Barber appeals both his plea and sentence.

For the reasons set forth below, we AFFIRM the plea and sentence.

## FACTS AND PROCEDURAL HISTORY

On October 3, 2021, Ouachita Parish Sheriff deputies arrived at 1807 Bailey Street, West Monroe, Louisiana, in response to a domestic abuse battery complaint. Upon their arrival, officers made contact with Carolyn Barber, the victim. The victim stated that Barber, her live-in boyfriend of 23 years, struck her in the right side of her jaw and her left breast, then grabbed her legs and attempted to pull her out of the chair. Deputies observed and photographed scratches on the victim's left calf and thigh area, though the victim stated the scratches were from a previous altercation with Barber. She stated Barber had been drinking all day and the two became involved in a verbal confrontation, which ultimately led to a physical altercation.

Deputies made contact with Barber and advised him of his *Miranda* rights. Barber denied attacks upon the victim. Deputies noticed that Barber slurred his words and appeared unsteady on his feet.

Based upon the victim's statements, the injuries to the victim's leg, and Barber's suspected intoxication, Barber was arrested and transported to

Ouachita Parish Correctional Center ("OCC"). During transport, Barber told officers he was going to "whip some ass" when he got out of jail and threatened to kill the victim.

At the 72-hour hearing, the trial judge noted Barber's extensive criminal history consisting of multiple arrests for simple battery, domestic abuse battery, and public intoxication, including a conviction for domestic abuse battery. Based upon Barber's intoxicated condition at the time of his arrest and threats of physical violence and even death to the victim, Barber was ordered to be held without bail.

On January 11, 2022, a bill of information was filed charging Barber with domestic abuse battery-fourth offense. On July 26, 2022, Barber pled guilty to an amended charge of domestic abuse battery-third offense under *Alford*. Barber was sentenced to serve one year at hard labor without benefit of probation, parole, or suspension of sentence, and a fine of $2,000.

Barber appeals both his plea and sentence.

## DISCUSSION

### *Acceptance of Alford Plea*

Barber argues that there was not a sufficient factual basis to support the trial court's acceptance of his guilty plea under *Alford*. He claims that the alleged victim was never interviewed by the State and did not attend any court proceedings, and the only evidence in the record was denied by the accused, who consistently told the court that he was pleading guilty to get out of jail, despite his innocence. He further asserts that a police report is not sufficient evidence to prove guilt beyond a reasonable doubt, noting that although his girlfriend called the police, no injuries were found related to the complaint.

2

Barber also argues that he was coerced by the threat of remaining in jail for an indeterminate amount of time. He filed a series of pro se motions that were not heard, leaving him with a choice of either waiting longer or taking the plea offer for immediate release. Also, his social security payments – his only source of income – were discontinued while he was in custody and would not be renewed until his release.

Barber claims that his plea was not entered into freely and voluntarily under the circumstances because there was so little investigation into the matter and because of how long he was detained until his guilty plea was offered. He urges that there was no way to prove the elements of the charge since the sole witness was not going to appear and the only other evidence available was the police report. Barber reasons that since the key witness not available, had he not been held in custody, there would have been no plea.

The United States Supreme Court in *Alford* held that, "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Alford*, 400 U.S. at 37, 91 S. Ct. 160, 167. This Court in *State v. Banks*, 49,767 (La. App. 2 Cir. 4/15/15), 163 So. 3d 895, 901, further provided:

> *Alford* holds that an accused may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, or even if his guilty plea contains a protestation of innocence, when he intelligently concludes that his interests require a guilty plea and the record strongly evidences guilt.

In *Alford*, the defendant had been indicted for first degree murder. *Id.* Faced with strong evidence of guilt and no substantial evidentiary support of

his innocence, the defendant entered a plea of guilty to a reduced charge of second degree murder. *Id.* Although the defendant denied he committed the offense, he stated to the trial court that he was pleading guilty and indicated that he was doing so to avoid the death penalty for first degree murder. *Id.* The trial court accepted the defendant's guilty plea and imposed a sentence. *Id.* On appeal, the United States Supreme Court held that the trial court did not err in accepting the plea in view of the strong factual basis for the plea and the defendant's clearly expressed desire to enter the plea despite his professed belief in his innocence. *Id.*

When the court is faced with such assertive claims of innocence and coercion, there must be a different standard for affirming the guilty plea. *State v. Fullilove*, 11-34 (La. App. 5 Cir. 12/13/11), 81 So. 3d 809, 811. "A guilty plea is constitutionally infirm if it is not entered freely and voluntarily, if the Boykin colloquy is inadequate." *State v. McCoil*, 05-658 (La. App. 5 Cir. 2/27/06), 924 So. 2d 1120, 1124. The Court in *United States v. Johnson*, 612 F.2d 305, 309 (7th Cir. 1980), held as follows:

> The Constitution does not require the establishment in all cases of a factual basis for a guilty plea, *McCarthy v. United States*, 394 U.S. 459, 465, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969), but it does require that a plea be voluntary, *Henderson v. Morgan*, 426 U.S. 637, 644-45, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976). Failure to establish a factual basis is likely to affect voluntariness. Cf. *Carreon v. United States*, 578 F.2d 176, 179 (7th Cir. 1978). This is so because some information about the facts is necessary to an assessment of whether the accused understood "the law in relation to the facts," *McCarthy v. United States*, 394 U.S. at 466, 89 S. Ct. at 1171, and was able to appreciate "the nature of the charge against him," of which he was entitled to "adequate notice," *Henderson v. Morgan*, 426 U.S. at 645 n.13, 96 S. Ct. at 2257.

In addition, a no-contest guilty plea is valid only if "the plea represents a voluntary and intelligent choice among the alternative courses

of action open to the defendant." *Alford*, *supra*; *Wilcox v. Hopkins*, 249 F.3d 720, 724 (8th Cir. 2001), *cert. denied*, 534 U.S. 1139, 122 S. Ct. 1088 (2002). The court must look at the circumstances of each case to determine whether a plea has been entered voluntarily and intelligently. *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *Neal v. Grammer*, 975 F.2d 463 (8th Cir. 1992).

The standard under *Alford* is not whether the State may prevail at trial by establishing the essential elements of the crime beyond a reasonable doubt and negating all possible defenses. *State v. Orman*, 97-2089 (La. 1/9/98), 704 So. 2d 245. Rather, the standard is whether the strength of the factual basis, coupled with the other circumstances of the plea, reflect that the plea represents a voluntary and intelligent choice among the alternatives. *Id*. The fact that a defendant believes he is innocent, and makes such belief known to the court, does not preclude him from entering a guilty plea. *State v. McCarty*, 499 So. 2d 292 (La. App. 1 Cir. 1986), *writ denied*, 505 So. 2d 56 (La. 1987).

This Court has required that there be "strong evidence of actual guilt" or a "significant factual basis" to support a plea which is entered under *Alford*. *State v. Jordan*, 619 So. 2d 648 (La. App. 2 Cir. 1993); *State v. Linear*, 600 So. 2d 113 (La. App. 2 Cir. 1992). Appellate courts have used evidence adduced at evidentiary hearings, such as a preliminary examination or a hearing on a motion to suppress, to find a factual basis to support an *Alford* plea. *Orman*, *supra*. In *State v. Scroggins*, 18-1943 (La. 6/26/19), 276 So. 3d 131, the Louisiana Supreme Court noted that a guilty plea was supported because there was strong evidence in the record with a complete sentencing hearing, presentence investigation, and police reports. However,

5

in *State v. Jackson*, 17-612 (La. App. 5 Cir. 4/11/18), 245 So. 3d 1250, the Fifth Circuit found patent error in the State's failure to present strong evidence of actual guilt and held the guilty plea invalid.

The State argues that the following factual basis provided for the plea at the *Alford* proceeding was sufficient to support Barber's guilty plea because it contained the requisite details for the domestic abuse charge:

> Judge, if I may, deputies arrived at 1807 Bailey Street in reference to a domestic battery complaint. Upon arrival, they made contact with Carolyn Barber, who stated her live-in boyfriend, Ronald Barber, of approximately twenty-three years battered her. She stated that he had been drinking all day, and they became involved in a verbal altercation. She stated that Ronald struck her in her right cheek area and then struck her in her left breast. Carolyn stated Ronald grabbed her calves and attempted to drag her from the chair she was sitting in. The deputy did say that she observed no signs of battery but did obtain photographs and observed scratches on her left calf and thigh area. Carolyn admitted that those marks were made some time back by Ronald when he hit her with a fork. Then, based upon that information, the injuries to Carolyn's leg and her statement, Ronald was arrested for one count of domestic abuse battery.

In addition, the State asserts that the record contains strong evidence of Barber's actual guilt. Discovery material disclosed to Barber included the bill of information, affidavit for arrest without a warrant, Barber's lengthy criminal record, the police report, pictures, and prior convictions. The police report contained the victim's statement at the scene that Barber had been drinking all day and that a verbal confrontation had turned physical. Also, deputies acknowledged that upon contact with Barber, he exhibited signs of intoxication – his words were slurred and he was very unsteady on his feet. Photographs were taken by deputies of scratches on the victim's left calf and thigh area. After Barber was arrested, he threatened physical harm and even death to the victim.

6

Further, the record shows that Barber suggested the *Alford* plea himself. Although he claims that he filed several pro se motions that were never heard, no motions were filed to move the matter forward, such as a motion for speedy trial. He clearly expressed a desire to plead despite his professed belief in his innocence. The following exchange took place between Barber and his trial counsel:

> MR. BRITTON: And I advised my client of that offer, and the -- I told my client that based upon our earlier conversations, in which he indicated that he was not guilty, that in the event that he took this plea that the -- he would be required to pass boykin and that if he did not pass boykin, he could not accept that particular plea offer. He has written me a letter, which I have not read today, in which he says he wants to plead nolo contendere in reference to that particular matter, and I would accept that as some type of re -- request for an *Alford versus North Carolina* matter. Is that correct, Mr. Barber?
>
> MR. BARBER: Yeah.
>
> MR. BRITTON: Do you wish to accept the plea, but you --
>
> MR. BARBER: Yeah.
>
> MR. BRITTON: --want to do it under nolo contendere?
>
> MR. BARBER: Yeah. That means that I didn't --
>
> MR. ANDERSON: Judge, --
>
> MR. BARBER: -- do it.

Barber stated that he understood his rights and that by pleading no contest, he would be waiving those rights. He stated that he was entering the plea voluntarily and no one forced or coerced him to accept the plea. The following exchange also took place between the trial court and Barber:

> THE COURT: Do you want to get this over with?
>
> MR. BARBER: Yeah. Let's get it over with, but I -- really, I didn't do it. But I'll take the plea where I can get out of jail and go south.

7

THE COURT: So, you're not going to fight her --

MR. BARBER: No.

THE COURT: -- allegations?

MR. BARBER: But it didn't happen.

THE COURT: Listen to me. You're not going to fight her allegations; is that right?

MR. BARBER: Your Honor, I just want to get out where I can go -

THE COURT: Is that a yes, or no?

MR. BARBER: -- down south.

THE COURT: Just answer my question.

MR. BARBER: My brother is dying.

THE COURT: Just answer my question, sir, so I can --

MR. BARBER: Yeah. I ain't going to fight it. I've done did ten months for nothing. And they're going --

THE COURT: And do you understand that --

MR. BARBER: -- to knock something off.

\*\*\*

THE COURT: All right. All right. And -- and you heard what they state that Ms. Barber said you did; right?

MR. BARBER: I didn't --

THE COURT: You -- you heard that?

MR. BARBER: Yeah. I heard it.

THE COURT: That's -- so, that's what the State would be trying to prove at a trial that that is true and that's what happened. Do you understand that?

MR. BARBER: I know what they're trying to do. Yeah.

THE COURT: All right. And you're saying that that may be so, but you're saying that you didn't do it, but you're not going to contest?

8

MR. BARBER:  Yeah. I didn't do it, but I ain't going to fight it. I done did my time, and I'm fixing to get out and home.

THE COURT:  And did you understand your rights, sir?

MR. BARBER:  I -- I understand it all.

***

THE COURT:  All right. And you're giving up your rights; is that correct?

MR. BARBER:  That's right.

THE COURT:  All right.  Anyone forcing you to do so?

MR. BARBER:  Nobody ain't forcing me to do nothing.

Barber clearly expressed his desire to enter the plea despite his profession of innocence.  He understood the charges against him and knew that the State would have to prove the allegations at trial, but still chose to enter a guilty plea because he was fully aware that he would soon be released from prison under the pled sentence.  In addition, there was a sufficient factual basis to support the pled charge given the victim's statement at the scene, the officers' observations and suspicions of Barber's intoxication, Barber's threats made toward the victim, and Barber's criminal history, which included domestic violence.  The trial judge also gave Barber the opportunity to discuss potential additional evidence to support his defense, which Barber was unable to produce.  There was more than enough of a factual basis for Barber to understand the law in relation to the facts of the case and appreciate the nature of the charges, clearly establishing the voluntariness of the plea among the alternatives.

*Hardship Hearing Requirement and $2,000 Fine*

Barber argues that the trial court erred when it imposed a fine of $2,000 without conducting the mandatory hearing under La. C. Cr. P. art. 875.1 to determine whether the fine is unreasonable considering Barber's indigent status. He states that the record shows he was an indigent defendant whose sole income was social security, which was suspended during his incarceration, so there should have been a full hearing on the hardship involved in imposing the fine with a sanction of jail time if unpaid.

Barber cites this Court's holding in *State v. Jarratt*, 53,525 (La. App 2 Cir. 6/24/20), 299 So. 3d 1202, 1216, which discussed the requirements set out in La. C. Cr. P. art. 875.1 of a sentencing court before imposing financial obligations, as follows:

> For sentences imposed after August 1, 2019, Art. 875.1C(1) requires a hearing in the district court to determine whether any "financial obligations," which are defined in paragraph B as "any fine, fee, cost, restitution, or other monetary obligation," will impose undue hardship on the defendant or his dependents. This hearing cannot be waived. La. C. Cr. P. art. 875.1C(2). Pursuant to this hearing, the court is authorized to waive all or part of the payments or to make a payment plan. Additionally, La. C. Cr. P. art. 875.1D(2) offers options for the payment plan or alternatives to payment. Most importantly, Art. 875.1A enacts the policy that "financial obligations" (fines, fees, costs, and restitution) should not create a barrier to the offender's successful rehabilitation and reentry into society. Financial obligations in excess of what an offender can reasonably pay undermine the primary purpose of the justice system which is to deter criminal behavior and encourage compliance with the law. Financial obligations that cause undue hardship on the offender should be waived, modified, or forgiven.

In particular, Barber emphasizes that this hardship hearing cannot be waived.

However, the terms and effective dates of La. C. Cr. P. art. 875.1 have fluctuated since its enactment in 2017, as explained in *State v. Dauzat*, 23-16

10

(La. App. 3 Cir. 4/26/23), 2023 WL 3086034. When La. C. Cr. P. art. 875.1 was first enacted, with an effective date of August 1, 2018, the requirement of the hearing could not be waived. Article 875.1 was amended in 2018 to include the ability of either the defendant or the court to waive the hardship hearing pursuant to certain requirements, with such changes effective August 1, 2019. Nevertheless, the provisions of Article 875.1 were suspended through August 1, 2021. Ultimately, La. C. Cr. P. art. 875.2 was enacted in 2021 that repealed Article 875.1 in its entirety, essentially resulting in Article 875.1 never becoming effective.

Barber pled guilty to domestic abuse battery-third offense, in violation of La. R.S. 14:35.3, on July 26, 2022. Subsection E provides in pertinent part:

> On a conviction of a third offense...the offender shall be imprisoned with or without hard labor for not less than one year nor more than five years and shall be fined two thousand dollars. The first year of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence.

After finding a factual basis for Barber's *Alford* plea, the trial court asked if he was ready to be sentenced or whether he wanted to wait for three days. Barber responded that he was ready for sentencing. The trial court imposed a sentence within statutory limits, one year at hard labor without benefit of probation, parole, or suspension of sentence, and a fine of $2,000. The trial court took into consideration Barber's indigency and ran his fine default time concurrent with his sentence; therefore, even if Barber defaulted on the fine, he would serve no additional time.

As explained above, there is no longer any requirement that the trial court conduct a financial hardship hearing prior to imposing a fine. Even with Barber's seemingly public policy argument that the fine is wrongful

11

since he is an indigent defendant, Barber's claim is moot because any default time would never have been served since it was ordered concurrent with the existing sentence.

## CONCLUSION

For the foregoing reasons, this Court AFFIRMS Barber's *Alford* plea and sentence of one year at hard labor without benefit of probation, parole, or suspension of sentence, and the imposition of a $2,000 fine, with default time to be served concurrently.

**AFFIRMED.**